In the Matter of The Contested Case of **BROEN MEMORIAL HOME, Appellant,**

v.

**MINNESOTA DEPARTMENT OF HUMAN SERVICES,**
Respondent.

**No. C1–84–1618.**

Court of Appeals of Minnesota.

March 12, 1985.

John M. Broeker, Samuel D. Orbovich, Broeker, Hartfeldt, Hedges & Grant, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Gary A. Van Cleve, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Broen Memorial Home appeals from an order in which the Commissioner of Human Services held (1) Minn.R. 9510.0030, subp.

3.J. (1983) requires the use of the gross dollar method when calculating paybacks, (2) Minn.R. 9510.0470, subp. 4.B. (1983) permits only nursing homes with 65 percent welfare patient days to obtain a waiver of the 93 percent occupancy limitation, and (3) the Commissioner has no jurisdiction to determine whether a rule is arbitrary.

Broen contends (1) the gross dollar method should not be applied in setting its paybacks because its occupancy has decreased, and (2) the Commissioner erred by failing to grant a waiver of the 93 percent occupancy limitation.

We affirm.

### FACTS

Broen Memorial Nursing Home is a non-profit, long-term care facility. It is certified to participate in the Title XIX Medicaid Program. At the times in question the welfare resident per diem rates for nursing homes were set pursuant to Minn.R. 9510. Prospective per diem rates are based on historical cost plus projected known cost increases divided by "adjusted patient days." If unimplemented known cost changes exceed under-projected known cost changes, the Department of Human Services (DHS) claims a payback and the nursing home must refund the money.

Based on Broen's cost reports for the fiscal year ending April 30, 1981, DHS approved welfare rates of $28.99 and $20.69 per day effective for the period May 1, 1981 through April 30, 1982. Known cost change allowances accounted for $1.31 of the first rate and $1.25 for the second rate. During a desk audit of Broen's cost report for the fiscal year ending April 30, 1982, DHS determined Broen made a net over-projection of known cost changes of $18,275. It adjusted Broen's welfare rates for the fiscal year ending April 30, 1982 to $28.91 and $20.25 per day. These adjusted rates included a payback of $.08 per day and $.44 per day respectively.

For the fiscal year ending April 30, 1982, welfare patient days accounted for 54.47 percent of the actual patient days. Broen's occupancy rate was 85.46 percent.

Based on Broen's cost change report for the fiscal year ending April 30, 1982, DHS approved welfare rates of $31.39 and $21.68 effective May 1, 1982 through April 30, 1983. Known cost change allowances accounted for $1.48 of the first rate and $.97 on the second rate. During a desk audit of Broen's cost report for fiscal year ending April 30, 1983, DHS determined Broen over-projected known cost changes by $73,324 and adjusted Broen's welfare rates for fiscal year ending April 30, 1983 to $30.25 and $20.89 per day. These adjusted rates included a payback of $1.14 per day and $.79 per day respectively.

For the fiscal year ending April 30, 1983, welfare patient days accounted for 55.05 percent of the actual patient days. Broen's occupancy rate was 76.74 percent.

In determining the paybacks DHS used the gross dollar method. Under the gross dollar method, a nursing home's prior year projection of expenditures in known cost change categories is compared with the actual current year's expenditures in those categories. If the home underspent its projection, DHS calculates the payback rate based on the gross dollar that the home underspent.

Broen appealed the retroactive adjustment of its rates and requested a waiver of the 93 percent occupancy limitation rule. The request was denied, and Broen appealed the denial.

The matters were submitted to an administrative law judge on stipulated facts and cross motions for summary disposition. The administrative law judge determined (1) Minn.R. 9510.0030, subp. 3.J. (1983) requires the use of the gross dollar method for calculating paybacks rather than the per diem method as advocated by Broen, (2) Minn.R. 9510.0470, subp. 4.B. (1983) permits only nursing homes with 65 percent welfare patient days to request a waiver of the 93 percent occupancy limitation, and (3) the validity of a rule cannot be challenged in a contested case on the grounds it is arbitrary. He granted DHS's motion for summary disposition and denied Broen's

cross motion. The Commissioner of Human Services adopted the administrative law judge's findings and conclusions.

## ISSUES

1. Does Minn.R. `9510.0030, subp. 3.J. (1983) require the use of the gross dollar method for calculating paybacks?

2. Did DHS err when it denied Broen's request for a waiver of the 93 percent occupancy limitation?

## ANALYSIS

### I.

1. Broen contends, because it experienced a material decrease in occupancy, a per diem method rather than the gross dollar method used by DHS should be employed in calculating paybacks. DHS has used both methods in the past. DHS employed the gross dollar method generally but employed a per diem method when there were material changes in patient day occupancy between reporting periods. Where the occupancy of a nursing home decreases between the prior year and the next year, the per diem method works to the nursing home's advantage but works to DHS's advantage in cases of increased occupancy.

In 1982, the Supreme Court considered "whether the Department of Public Welfare's practice of computing cost change implementation on a per diem basis constitutes a permissible interpretation of [Minn.R. 9510.0030] or an improper promulgation of the new rule." *White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare*, 319 N.W.2d 7, 7 (1982). The court held:

> [C]alculations made using the per diem method cannot be enforced because the per diem method is a rule which has not been promulgated in accordance with the Administrative Procedure Act.

*Id.* The court found Minn.R. 9510 unambiguous stating, "There is no suggestion in the language that present occupancy rates are in any way involved in the calculation * * *." *Id.* at 9.

The rule permits "allowance for known cost changes" in computing the per diem welfare rate. Future cost increases or decreases "must be added to or deducted from the historical rate". These changes are projected in gross dollar amounts. If the changes do not in fact occur the welfare rate is readjusted and repayment required. *Id.* Ever since the court's decision in *White Bear Lake,* DHS has used only the gross dollar method for calculating paybacks.

The administrative law judge and the Commissioner found *White Bear Lake* controlling and concluded that Minn.R. 9510.0030, subp. 3.J. (1983) requires the use of the gross dollar method for calculating paybacks in this case. We agree.

We understand Broen's frustration upon discovering the DHS no longer employed a per diem method in calculating paybacks when there were material changes in patient day occupancy between reporting periods. *White Bear Lake,* however, precludes the DHS from using the per diem method for calculating paybacks. It is irrelevant that in *White Bear Lake* the nursing home's occupancy rate increased rather than decreased. The court's holding is based upon a clear reading of the rule and upon the legal requirements of rulemaking which had not been met when DHS adopted the per diem method.

2. Broen claims the DHS is required to employ proper rulemaking procedures to end its practice of using the per diem method for nursing homes where occupancy has decreased. This argument assumes the supreme court invalidated only the use of the per diem method when the occupancy of a nursing home increases. Since the court held the practice constitutes an impermissible interpretation of the rule, it is invalid in all cases. No further action to repeal is required. *See* Minn.Stat. § 14.69 (1984).

3. Broen argues the Commissioner erred by failing to apply Minn.Stat. § 645.-20 (1982), which provides the criteria for

construing a law or rule when a provision of the law or rule is found to be unconstitutional and void. Minn.Stat. § 645.20 is inapplicable in this case. No law or rule has been found to be unconstitutional and void. Computing paybacks by the per diem method was merely a practice used by DHS. It was neither a law nor a rule.

■ 4. Broen also argues the Commissioner's finding that Broen's gross dollar paybacks are fair is not supported by substantial evidence in the entire record. The Commissioner did not find the paybacks were fair nor is he required to do so under Minn.R. 9510.0030, subp. 3.J. (1983). The Commissioner adopted the findings of the administrative law judge who made no finding of fairness but merely discussed it in his memorandum. Since the rule does not require a determination of fairness, we need not consider it.

5. Broen finally argues that after the supreme court prohibited the practice of using the per diem method for calculating paybacks, DHS's failure to promulgate a new rule for nursing homes having decreases in occupancy constitutes a breach of its statutory duty under Minn.Stat. § 256B.04, subd. 2 (1982) because the payback rule is unreasonable as applied. Minn.Stat. § 256B.04, subd. 2 requires the DHS to:

[m]ake uniform rules and regulations, not inconsistent with law, for carrying out and enforcing the provisions hereof in an efficient, economical, and impartial manner * * *.

*Id.* The administrative law judge concluded he was without jurisdiction to invalidate the rule. Broen cites no authority granting an administrative law judge the authority to consider the issue it raises.

■ Broen asks us to consider the issue if we conclude the administrative law judge was correct. Broen asserts the stipulated facts offer sufficient evidence for us to find the rule is unreasonable as applied to it and the Commissioner violated his duty to make impartial, efficient and economical rules. DHS contends Minn.Stat. § 14.44 (1982), which provides for declaratory judg-

ment actions, is the exclusive method for obtaining judicial review of a rule and this court may not consider the validity of a rule when reviewing a contested case matter. Minn.Stat. § 14.44 provides for pre-enforcement rule challenges and is not the exclusive method for challenging the validity of a rule.

■ This court may consider the validity of a rule if the matter was properly raised in a contested case hearing and fully briefed. *See, e.g., Blocher Outdoor Advertising Company, Inc. v. Minnesota Department of Transportation,* 347 N.W.2d 88 (Minn.Ct.App.1984); *see also* Minn.Stat. § 14.69 (1984).

A rule, promulgated pursuant to statutory authority:

"is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *[State By Spannaus v.] Hopf,* 323 N.W.2d [746] at 752 [ (Minn.1982) ] (quoting 1 K. Davis, *Administrative Law Treatise,* § 50.03 at 299 (1958)); Minn.Stat. § 14.38, subd. 1; *Cf.* Minn.Stat. § 14.45 (in a pre-enforcement rule challenge the court shall declare a rule invalid if it violates constitutional provisions, exceeds the statutory authority of the agency, or was adopted without compliance with statutory rulemaking procedures).

*Blocher,* 347 N.W.2d at 91. Broen challenges only the reasonableness of the rule. A rule is reasonable if "rationally related to the end sought to be achieved by the act." *Id.* The reasonableness of a rule is viewed toward the end sought to be achieved and not in light of its application to a particular party. Broen's only argument is that the rule is unreasonable when applied to it. This argument is without merit.

## II.

1. Under Minn.R. 9510.0470 (1983), fixed costs are divided by 93 percent of the total capacity patient days in order to determine per diem rates. This provision is

an incentive for nursing homes to maintain occupancy above 93 percent of their capacity.

Broen requested a waiver of the 93 percent capacity limitation for the rate period March 1, 1983 through April 30, 1984. With a waiver, the per diem rate would be based on actual patient days. The waiver was denied because Broen did not have 65 percent welfare days.

Nursing homes may apply for a waiver of the 93 percent capacity limitation under certain circumstances:

> In cases of extreme hardship, nursing homes not covered by item A and having over 65 percent welfare patient days may be granted an annual waiver by the commissioner of this capacity calculation and be allowed a rate based on actual patient days.

Minn.R. 9510.0470, subp. 4.B. (1983). Broen concedes it did not have 65 percent welfare days. It contends the rule became ambiguous and arbitrary when the private pay equalization law was enacted because nursing homes are required to charge private patients the same rate as approved for medical assistance for similar services. *See* Minn.Stat. § 256B.48, subd. 1(a) (1984). Broen argues because of equalization both welfare and private patients should be counted in determining welfare patient days.

The Commissioner ruled (1) he has no jurisdiction to determine whether a rule is arbitrary and (2) the statute permits only nursing homes with 65 percent welfare patient days to request a waiver of the 93 percent occupancy rule. We agree with the Commissioner that the rule clearly and unambiguously only allows waivers for homes with 65 percent welfare patient days. We also agree that the Commissioner has no jurisdiction to determine whether a rule is arbitrary.

2. Broen challenged the validity of the rule in the contested case and argues it is unreasonable and not rationally related to the end sought to be achieved by the act. We find this argument wholly unpersuasive. Chapter 256B was enacted to provide medical assistance to needy persons. *See* Minn.Stat. § 256B.01 (1984). A rule requiring 65 percent welfare patient days before the benefits of a waiver are granted encourages the provision of services to needy persons. The rule is rationally related to the end sought to be achieved by the act. Therefore, it is not unreasonable.

## DECISION

Minn.R. 9510.0030 (1983) requires the use of the gross dollar method for calculating paybacks. DHS did not err when it denied Broen's request for a waiver of the 93 percent occupancy limitation.

Affirmed.