**Guy T. WARD, et al., Appellants,**

v.

**Jan I. SMABY, in her official capacity as Director of the Hennepin County Department of Economic Assistance and the Hennepin County Board of Commissioners, and Leonard W. Levine, Commissioner of the Minnesota Department of Human Services, defendant-intervenor, Respondents.**

Nos. C7–86–1174, C6–86–1280.

Court of Appeals of Minnesota.

May 5, 1987.

M. Francesca Chervenak, Laurie N. Davison, Legal Aid Society of Minneapolis, Inc., Minneapolis, for Ward, et al.

Thomas Johnson, Hennepin Co. Atty., Robert Gyurci, Asst. Hennepin Co. Atty., Minneapolis, for Jan I. Smaby.

Hubert H. Humphrey, III, Atty. Gen., John L. Kirwin, Sp. Asst. Atty. Gen., St. Paul, for Leonard W. Levine.

Heard, considered and decided by LANSING, P.J., and WOZNIAK, and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellants Gary Ward and Raymond Baker were terminated from the Hennepin County Work Readiness (WR) program. They sued Hennepin County and the Minnesota Department of Human Services seeking injunctive and declaratory relief, and moved for class certification, as well as intervention of a third plaintiff. Judgment was granted for respondents on all claims. Ward and Baker appeal the denials of their motions for class certification, intervention, a new trial and additional findings, and from judgment. Respondents cross-appeal the denial of their motion to dismiss. We affirm.

## FACTS

### Work Readiness Program

The General Assistance (GA) program is a welfare program designed to provide for people who lack the income to insure a "subsistence reasonably compatible with decency and health." Minn.Stat. § 256D.01, subd. 1 (1984). Prior to August 1, 1985, any person whose income and resources were less than the level established by law and who were not eligible for other forms of assistance, were entitled to GA benefits. Minn.Stat. § 256D.05, subd. 1 (1984).

In 1985 the Minnesota Legislature created the Work Readiness program effective August 1, 1985. This legislation changed the GA eligibility requirements so that persons whose income and resources fell below the standard were eligible for GA only if they fell into one of fourteen categories designed to identify persons who are unemployable. Minn.Stat. § 256D.05, subd. 1 (Supp.1985). Persons who meet the income and resource requirements for GA but do not fall into one of the fourteen categories are eligible for the Work Readiness program. Minn.Stat. § 256D.051, subd. 1 (Supp.1985).

The WR program provides financial assistance and services to develop basic job search skills. Each county was to design a program and provide specific employment services. Minn.Stat. § 256D.051, subd. 2 (Supp.1985). Each WR registrant is entitled to receive cash assistance equal to GA benefits during the period they are eligible for WR. *Id.* § 256D.051, subd. 1.

The WR program requires the local agency to provide a work readiness program which includes:

(1) an employability assessment and development plan in which the local agency estimates the length of time it will take the registrant to obtain employment;

(2) referral to available employment assistance programs including the Minnesota employment and economic development program;

(3) a job search program; and

(4) other activities designed by the local agency to prepare the registrant for permanent employment.

*Id.* § 256D.051, subd. 2.

All WR participants are eligible for two months of assistance. Minn.Stat. § 256D.051, subds. 1, 4. During the second month of WR, the county must conduct an assessment and determine if a registrant is eligible for four more months of assistance. *Id.* § 256D.051, subd. 4. To be eligible the county must find that a registrant (1) has borderline mental retardation; or (2) exhibits perceptible symptoms of mental illness; or (3) is unable to secure suitable employment because the person lives in a distressed county or the county has determined there are no jobs available that a person with the registrant's history, ability and skills can perform. *Id.* § 256D.051, subd. 5. If a registrant is not eligible under one of the above categories at the two month assessment, he or she must be terminated at the end of the second month. *Id.* § 256D.051, subd. 4. A registrant who is ineligible for an additional four months will not be eligible to participate in the program again for twenty-two months. Registrants who are eligible for

an additional four months can receive a maximum of six months of benefits in any consecutive twelve month period. *Id.* § 256D.051, subd. 5.

Emergency rules were promulgated by the Department of Human Services to implement the WR program. Under these rules, the registrant must cooperate with the county in the two-month assessment. *See* 10 Minn.Reg. 926 (Emergency Rules 9500.1216, subp. 1). Persons who fail to comply with requirements of the WR program may be terminated and will not be eligible for a period of two months for WR assistance they would otherwise be eligible for. Minn.Stat. § 256D.051, subd. 3. The rules provide a specific procedure for disqualifying a person who has failed to comply. The county must notify the registrant and state the following information: (1) the specific requirement the registrant failed to comply with and facts supporting the county's determination; (2) what the registrant must do to comply and a specific deadline for compliance (15 days minimum); (3) that the registrant will be disqualified from receiving payments and services if he or she fails to comply; and (4) that the registrant may request and will be granted a conference to discuss the notice. *See* 10 Minn.Reg. 311, 927 (Emergency Rules 9500.1218, subp. 1).

If the registrant fails to comply by the specified date, the agency must evaluate the registrant and determine if he or she is eligible for GA. If eligible, the registrant will be terminated from WR and placed on GA. If not eligible and the registrant has failed, without good cause, to comply with WR and subsequently failed to take the required action after notice, that person will be disqualified for a period of 60 days. Registrants will receive notice of this which contains a notification of their right to appeal. *See* 10 Minn.Reg. 311–12, 927–28 (Emergency Rules 9500.1218, subps. 2, 3, 4).

The legislature required the WR program to take effect August 1, 1985. However, at the beginning of August a temporary injunction was issued preventing local agencies from terminating GA recipients and referring them to WR until the agency properly assessed each one for GA eligibility under the 14 eligibility categories. *See Evans v. Levine,* Ramsey County Dist.Ct. No. 473662 (August 9, 1985). As a result, Hennepin County notified all persons who had been terminated from GA and referred to WR in July that their participation in WR was voluntary. After each recipient was assessed, those ineligible for GA were sent a notice of the County's determination and informed that participation in the WR program was mandatory in order to receive benefits. As a result of the *Evans* injunction, those terminated from GA in July and who elected to participate in WR did not become mandatory WR participants until October 1, 1985.

### Hennepin County's Work Readiness Program

A registrant in Hennepin County's WR program receives a Notification of Applicants Rights and Responsibilities. The program consists of three mandatory sessions plus the opportunity to take advantage of job search aids such as phone banks, job listings and help with applications and resumes.

The first mandatory session is Orientation where the registrant receives a notice describing the program and the responsibilities of the participant. An enrollment form, indicating prior work history, becomes part of the file.

The second session, known as the Employability Development Plan (EDP), is a group session conducted by two vocational counselors. Participants complete forms on three job strengths, three job weaknesses and three job goals which are placed in their file.

During the second month of WR participation, registrants are scheduled for a two-month assessment to determine eligibility for four more months of benefits. At this session the participants complete a Work Readiness Evaluation and fill out a form recording any time spent looking for a job. WR personnel then determine whether a registrant continues on the WR program for four more months, is eligible for GA (usually by scoring less than an 8th

grade level on the literacy test) or is terminated from WR.

All registrants who attended the two-month assessment were either continued on WR or determined eligible for GA. Prior to February 1, 1986, all registrants who did not attend their assessments were terminated from WR unless they had previously been identified as mentally ill or mentally retarded. Prior to March 1, 1986, if the registrant showed up for the assessment, he or she was continued on WR, and if the registrant failed to show up, he or she was terminated. Those not continued on WR prior to October 25, 1985 were given a Notice of Decision and Termination which listed failure to cooperate as the reason for failure to qualify for four additional months. After October 25, 1985, the reason given for failure to qualify was "Not Eligible for Any Category" which referred to the categories in Minn.Stat. § 256D.051, subd. 5.

### Guy Ward

Guy Ward is thirty years old and has been a GA recipient for some time. In July 1985, Ward received a notice of termination of his GA benefits. He registered for WR, attended two orientation sessions, and then received notice that because of the *Evans* injunction he was to be put back on GA. Ward became a mandatory WR participant as of October 1, 1985, but was not scheduled for any WR activities until he received notice of his two-month assessment. Because of his poor reading ability he took the notice to a friend for assistance. His friend told him the time and place for his assessment. Because of illness Ward did not attend but testified that he called and was told he would receive another appointment. No other appointment was received.

Ward received a Notice of Decision and Termination and a Notice of Action telling him he had been assessed and would be terminated as of November 30, 1985. The notice informed Ward of the four eligibility categories and provided a name and number for him to call if he thought he was eligible. Ward testified he understood he could call but did not do it. The notice also indicated he had a right to appeal the decision within 30 days and if he appealed before November 30, 1985, his grant would be continued pending a hearing.

Ward filed an appeal and reapplied for GA in December 1985. At that time he took a literacy test and was found to be functionally illiterate. He was placed on GA as of December 19, 1985 but received no GA or WR benefits from December 1 to 19. The County offered to pay benefits for this nineteen day period but on the advice of counsel, Ward declined.

### Raymond Baker

Raymond Baker is a 49 year old man with an eleventh grade education. He has a sketchy job history of unskilled labor. His last regular job of seven years as an elevator operator ended in 1983 when the hotel closed. He has been on and off GA since that time.

Baker also was assessed and found ineligible for GA. He became a mandatory WR participant on October 1, 1985. Baker attended both the Orientation and EDP sessions. Baker claims to have received the notice for his two-month assessment on the day it was scheduled. He claims to have unsuccessfully tried to call and reschedule the appointment.

Baker also received a Notice of Termination and Decision indicating that he had been assessed and found ineligible and benefits would end November 30, 1985. Baker moved to Kanabec County and reapplied for the WR program. He was placed back in the program as of February 1, 1986, because he was now living in a distressed county and therefore eligible under the statute for four more months of benefits.

### ISSUES

1. Did Hennepin County fail to provide the services required by the Work Readiness statute and rules?

2. Did Hennepin County fail to assess registrants and violate equal protection in terminating appellants from the WR program?

3. Did Hennepin County fail to follow the disqualification procedures in violation of the Work Readiness statute and rules?

4. Did the notices used in the WR program violate the Work Readiness statute, rules, and due process?

5. Did the trial court err in failing to certify this case as a class action?

6. Did the trial court err in not allowing intervention of a third plaintiff at the end of trial?

## ANALYSIS

### 1

Appellants argue that Hennepin County failed to provide all of the required services and that services provided were inadequate. Appellants particularly object to the County's plan for assessment and employability development plan.

The statute provides that the WR program must include:

(1) an employability assessment and development plan in which the local agency estimates the length of time it will take the registrant to obtain employment;

(2) referral to available employment assistance programs * * *;

(3) a job search program; and

(4) other activities designed by the local agency to prepare the registrant for permanent employment.

Minn.Stat. § 256D.051, subd. 2 (Supp.1985).

The rules require:

In consultation with the registrant, a vocational advisor shall complete a written employability assessment. The assessment must include an examination of the registrant's education, training, prior work experience, and suitable employment that is or may become available in the registrant's local labor market, and must identify barriers to the registrant successfully seeking and securing suitable employment.

*See* 10 Minn.Reg. 925 (Emergency Rules 9500.1215, subp. 2(A)). Based on the assessment, the vocational counselor is to develop a written employability development plan designed to address barriers to employment and prepare the registrant for suitable employment. The plan must, among other things: (1) estimate the length of time needed to obtain suitable employment; (2) specify the registrant's job search requirements; (3) specify any other reasonable activities designed to prepare the registrant for employment; and (4) provide a means to assess the registrant's progress. *See* 10 Minn.Reg. 309, 925 (Emergency Rules 9500.1215, subp. 2(B)).

■ Appellants' focus on the form generated at the second mandatory session, the EDP session. Because this session is in a group setting instead of one-to-one meetings, appellants charged that the vocational advisor has not conducted an assessment or developed the required written plan. However, the evidence indicated that there was significant verbal instruction and communication by the counselors who are available to provide any assistance necessary in filling out or helping with the forms. Appellants indicate that the EDP form fails to ask for information on education and work history. However, that information is already present in a registrant's file.

The written plan, as it existed in November 1985 did not on its face provide referral to appropriate employment assistance or specify job search requirements. However, the registrants were given access to written lists of available jobs in the local market.

Hennepin County was given approximately one month to implement a radical change in an established welfare program which required the County to place approximately 7700 people on the WR program at one time. The program implemented by Hennepin County is not perfect but as problem areas have been identified the County has taken steps to correct the problems and improve the program. The record indicates that the Hennepin County WR plan, when viewed in its entirety, complied with the statute and substantially complied with the rules.

### 2.

At the time appellants were terminated from the WR program, those who did not attend the County's two month assessment were terminated. The County attempted to

reschedule appointments for those who indicated they had problems with the scheduled appointment.

The vast majority of those who continue to receive benefits are eligible as persons who "cannot reasonably be expected to secure suitable employment." *See* 10 Minn. Reg. 926 (Emergency Rules 9500.1216, subp. 1(D)). The County determined that failure to attend the two month assessment session indicated an uncooperative registrant and deprived the County of sufficient information to make a determination as to continued eligibility. Appellants argue that there is sufficient material in a registrant's file to allow an evaluation without the participant's attendance. At that point however, the only thing in the file is the registrant's enrollment form and EDP, which appellants say are inadequate. If so, they would be inadequate to determine continued eligibility and thus registrants must be terminated unless they participate in the assessment and provide additional information.

■ Appellants argue that this treatment not only violated the statutory requirements for assessment but also violated rights to equal protection. Because determination of eligibility was based solely on who attended and who did not, appellants argue it was arbitrary and capricious because attendance had no relationship to eligibility for extension. Under the equal protection clause:

> [T]he rights of all persons must rest upon the same rule under similar circumstances; and where classification is adopted it must be based on some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.

*Northern States Power Co. v. Esperson,* 274 Minn. 451, 456, 144 N.W.2d 372, 376 (1966). However, it was appellants' own conduct in failing to attend the assessment or send written materials that deprived the County of the opportunity to elicit eligibility information. Consequently, termination was not arbitrary or capricious.

3.

Appellants argue that the County failed to follow the disqualification procedures as required in Minn.Stat. § 256D.101. We need not address this complaint because appellants were not disqualified but rather terminated according to the proper statutory procedure. *See* Minn.Stat. § 256D.101, subd. 2 (Supp.1985).

4.

Under the Fourteenth Amendment to the United States Constitution and Article 1, § 7 of the Minnesota Constitution, no one should be deprived of life, liberty or property without due process of law. Appellants claim a property interest in WR benefits and respondents do not dispute that claim. Due process requires that prior to termination of these benefits, appellants must have adequate notice. *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970). For notice to be sufficient it must be

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The rules required that notices used in the WR program be written in "clear and easily understood English." *See* Minn. R. 9555.3409, subp. 1 (1985). Appellants claim they did not fully understand the notices they received and thus the notices violated due process.

■ The notices used by Hennepin County were written in clear and easily understood language and informed recipients of their obligations and rights. Ward and Baker admitted that they understood attendance was required, that help was available for what they did not understand, and that they could appeal their termination. In a recent Supreme Court decision involving notice given to recipients of food stamps, the Court said:

> As a matter of constitutional law there can be no doubt concerning the sufficiency of the notice describing the effect of

the amendment in general terms. Surely Congress can presume that such a notice relative to a matter as important as a change in a household's food-stamp allotment would prompt an appropriate inquiry if it is not fully understood. The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny. To contend that this notice was constitutionally insufficient is to reject that premise.

*Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 2530–31, 86 L.Ed.2d 81 (1985). Surely persons who receive any notice affecting their sole source of income should inquire if they have any questions as to what is happening or is required. The record supports the trial court's finding that the notices were in plain English and did not violate due process.

Appellants claim error in the denial of class certification.

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Minn.R.Civ.P. 23.01. *See Ario v. Metropolitan Airports Commission*, 367 N.W.2d 509, 510, 513 (Minn.1985). At the time of trial, neither appellant had a personal stake in the case or was in danger of sustaining a direct injury as a result of the challenged conduct. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 559, 42 L.Ed.2d 532 (1975). By the time this case came to trial, both Baker and Ward were receiving benefits. Ward appealed his denial of benefits in December and was found to be illiterate and placed on GA. Baker moved to Kana-bec County, a distressed county, and was placed on WR. Thus, appellants' claims were moot.

■■■ Although mootness generally requires a court to dismiss an action, dismissal may be inappropriate when issues are "capable of repetition yet evading review." *See Geraghty*, 445 U.S. at 398, 100 S.Ct. at 1209. The plaintiff's claims must be such that the court cannot be expected to rule on class certification prior to the claim's expiration, or the claim may soon arise again with respect to the same plaintiff. *Id.* at 398–99, 100 S.Ct. at 1209–10. Recipients terminated from WR remain terminated for 22 months, which would be time for an appropriate representative to seek class certification. Ward and Baker's specific claims probably will not recur in the near future. Ward is on GA and not eligible for WR because of illiteracy. For the situation to recur he would have to become literate, apply for WR and miss his two-month assessment. Baker would have to return to Hennepin County, apply for WR, be found eligible for WR and fail to attend the two-month assessment. The likelihood of these events are highly speculative and not sufficient to support a conclusion that the claims are likely to recur. *See SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972). The trial court did not err in refusing to certify the class action.

6.

■■ Appellants evidently recognized their inadequacies as proposed class representatives. Following the trial another registrant for benefits moved to intervene. The trial court, in denying the motion, correctly noted that the intervention was not timely, and that the movant was not precluded from bringing a separate lawsuit.

## DECISION

Hennepin County complied with the requirements of the Work Readiness statute. The County did not violate the appellants' due process or equal protection rights. The notices used by the County were ade-

quate. Class certification and intervention of a third party were correctly denied. We affirm the trial court.

Affirmed.