**In the Matter of the Petition of
Dr. Edgar TWEDT; TRA
Member 131102.**

No. C3–99–149.

Court of Appeals of Minnesota.

July 27, 1999.

Review Denied Sept. 28, 1999.

Edward M. Laine, Oppenheimer Wolff & Donnelly LLP, Minneapolis, for relator Dr. Edgar Twedt.

Mike Hatch, Attorney General, Jon K. Murphy, Assistant Attorney General, St. Paul, for respondent Board of Trustees of the Teachers Retirement Association.

Considered and decided by LANSING, Presiding Judge, KALITOWSKI, Judge, and SCHULTZ, Judge.*

OPINION

KALITOWSKI, Judge.

Relator Dr. Edgar Twedt is a retired professor who spent his last four years of

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

employment as the president of the Inter Faculty Organization (IFO), the exclusive bargaining representative of the faculty employed by the Minnesota State University system. Twedt challenges a decision of the Board of Trustees of the Teachers Retirement Association (TRA) limiting his pension-eligible salary to the salary he would have earned had he continued to teach.

## FACTS

Relator served as a professor at Mankato State University through July of 1992. At that time relator took a leave of absence from his teaching duties to serve as president of the IFO. Relator worked in this capacity until his retirement in June of 1996.

Minn.Stat. § 354.41, subd. 9 (1998), provides that members of the TRA are allowed to continue to accrue pension credits while serving as elected officers of a professional teachers organization. Pension benefits are determined based on the high five years of salary earned by a faculty member. During relator's final year of teaching he earned approximately $65,920. This amount included $52,977 in base salary, $6,294 in "overload" pay, and $6,294 for eight credits of summer school. In his first year as president of the IFO, relator's salary increased to $86,815 and remained at or above this level until he retired.

Upon relator's retirement, TRA staff concluded that under Minn.Stat. § 354.41, subd. 9, relator's retirement compensation should be calculated using the salary relator would have received had he continued to teach, rather than the salary relator received as president of the IFO. Relator objected to this interpretation of the statute and appealed, first to the president of the TRA, then to the TRA's board of directors. Both the president and the board rejected relator's request to increase his retirement benefits based on his IFO salary.

## ISSUE

Is the pension-eligible salary of a Minnesota State University professor who spends his last years of employment as an elected officer of a professional organization based on the professor's salary from the professional organization or the salary the professor would have received had the professor continued to teach?

## ANALYSIS

Determinations of the board of the TRA are subject to review by writ of certiorari. Minn.Stat. § 354.071, subd. 9–10 (1998). On certiorari review from a TRA decision, this court reviews the record to see whether the TRA's decision was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Stang v. Minnesota Teachers Retirement Ass'n Bd. of Trustees*, 566 N.W.2d 345, 347 (Minn.App.1997). The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

Both parties cite Minn.Stat. § 354.41, subd. 9, as the only statutory provision relevant to determining the effect of relator's IFO service on the amount of his pension. This section in relevant part states:

> Any member who has been granted a leave of absence to serve as an elected officer of a professional organization shall be entitled to acquire allowable service credit for the period of leave. To acquire the allowable service credit, the member shall make any required employee contributions currently during the period of the leave, *which shall be based upon the contract salary for which the member would have been eligible if the member had not been granted the leave of absence* and *shall be consistent with* the contract in force for the year occurring immediately prior to

the commencement of the leave of absence.

Minn. Stat. § 354.41, subd. 9 (emphasis added).

The plain language of the statute indicates its primary purpose is to allow elected officers of professional organizations to acquire service credit for their time spent on leave of absence from their academic duties. Although the statute does not specifically address limitations on the acquisition of allowable service credit for these officers, the legislature's use of the phrases "would have been eligible" and "shall be consistent with" supports the conclusion that the legislature meant to limit the acquisition of service credit in some way. Moreover, relator cites no language in the statute that would specifically allow him to dramatically increase his high five years of salary based on a salary earned while on leave of absence from his teaching position.

Further, when the meaning of the terms of a statute are in doubt, courts give great weight to the construction given by the body charged with administering the problem sought to be remedied by the statute. *Mammenga v. State Dep't of Human Servs.*, 442 N.W.2d 786, 792 (Minn. 1989). Here, the TRA board, which is charged with the administration of the retirement fund, concluded that:

> [t]he intent of section 354.41, subd. 9 (1996) is to limit an elected union officer's salary, for TRA purposes, to that which would have been earned as a teacher had the member not served as an elected officer * * *.

We conclude the board's interpretation of the statute is consistent with the language of the statute.

In addition, policy reasons support the board's interpretation. During his four years as the IFO president, relator was paid more than $55,000 more than he would have earned had he continued to teach at the same level he taught during the 1991–92 academic year. If the TRA calculated relator's monthly pension benefit on this salary, relator's pension would be almost $400 more per month, requiring a considerably greater amount in pension reserves to fund the extra benefit. Nothing in the record indicates that the IFO would have any responsibility for paying for this additional amount.

Relator also contends he is entitled to a higher pension because had he not taken the leave of absence he could have worked as many days as a teacher as he did as IFO president. But the number of days relator *could* have worked is not relevant. Not only has relator failed to offer any evidence that he *would* have worked this much, he acknowledges that he is not aware of any teacher who has worked as many days as he worked as IFO president. Moreover, under the agreement between the IFO and the state university board, a teacher's ability to work extra days is subject to the discretion of the individual school. Because relator has not demonstrated that he would have earned the same amount as a teacher as he did as an elected officer, we conclude the TRA correctly determined the amount of relator's pension benefits.

## DECISION

The TRA correctly determined that relator's pension-eligible salary should be based on the amount relator would have been paid had relator not been granted a leave of absence rather than the salary he received as president of the IFO.

**Affirmed.**