William Charles SISSON, Appellant,

v.

Mr. Thomas TRIPLETT, Minnesota Commissioner of Revenue, et al., Respondents.

No. C3–87–632.

Supreme Court of Minnesota.

Aug. 26, 1988.

Barry V. Voss, Minneapolis, for appellant.

Thomas K. Overton, and Kenneth Kohnstamm, Sp. Assts., St. Paul, for Com'r of Revenue.

John R. Krouss, Lake of the Woods Co. Atty., Baudette, for respondents.

WAHL, Justice.

This appeal arises from an action brought by William Charles Sisson, pursuant to 42 U.S.C. § 1983 (1982), challenging the constitutionality of the Minnesota Marijuana and Controlled Substance Taxation Act, Minn.Stat. ch. 297D (1986). The statute imposes a tax on marijuana and controlled substances, Minn.Stat. § 297D.08 (1986), and provides that assessment and collection of the tax be made pursuant to jeopardy procedures, Minn.Stat. § 297D.12 (1986). The trial court found the act constitutional and granted partial summary judgment for the state. We affirm.

By notice dated September 16, 1986, the Minnesota Department of Revenue (De-

partment) assessed Sisson $113,600 for taxes and penalties due on controlled substances. On September 17, 1986 the Department levied upon a recreational vehicle, travel trailer and lawn tractor owned by Sisson and located near Baudette, Minnesota. The Department notified Sisson by certified mail that these items would be sold at a public sale on October 17, 1986. On October 16, 1986, Sisson filed an appeal with the Minnesota Tax Court which was still pending when this case was argued. At the same time, in district court, Sisson applied for a temporary restraining order which was granted that same day after he posted a $1,200 bond to cover the costs of cancelling the sale. The restraining order was continued by a temporary injunction dated November 10, 1986.

Sisson moved for partial summary judgment declaring Minn.Stat. ch. 297D (1986) unconstitutional. He alleged that jeopardy assessments made pursuant to chapter 297D authorized the seizure and forfeiture of property without due process of law, and also violated his right against self-incrimination by mandating that an alleged dealer of controlled substances affix to those substances a tax stamp as evidence of payment of the tax. He also argued that the act causes irreparable injury in that it deprives him of his property without due process of law and does not provide an adequate legal remedy by which to challenge the basis of the jeopardy assessment.

Respondents brought a cross-motion for partial summary judgment declaring chapter 297D constitutional and enforceable.

The district court granted summary judgment for respondents holding, first, that since the act provides an opportunity to obtain a judicial hearing after seizure and prior to the sale of seized property, it fully meets the requirements of procedural due process. Regarding Sisson's substantive due process challenge, the court found that the act was not void-for-vagueness. Finally, the court determined that, since no information is required from the taxpayer and any volunteered information is subject to nondisclosure and use-immunity, the act does not violate rights against self-incrimination.

After briefing and oral argument, the court of appeals certified Sisson's appeal to this court for review pursuant to Minn.R. Civ.App.P. 118. Our review focuses on the following issues:[1] whether chapter 297D denies procedural due process as required by the fourteenth amendment to the United States Constitution and article I, section 7 of the Minnesota State Constitution; whether chapter 297D violates substantive due process; and whether chapter 297D violates an individual's right against self-incrimination as contained in the fifth and fourteenth amendments to the United States Constitution and in article I, section 7 of the Minnesota State Constitution.

I.

Minn.Stat. ch. 297D (1986) imposes a tax upon marijuana and controlled substances. Minn.Stat. § 297D.08. No dealer[2] may possess such substances unless the tax has been paid and stamps, issued upon payment, have been permanently affixed to the substances. Minn.Stat. §§ 297D.04, 297D.11, subd. 1 (1986).

Assessment and collection of this tax are made pursuant to jeopardy procedures. Minn.Stat. § 297D.12 (1986). That is, the commissioner of revenue need not first request voluntary payment from the dealer and then delay taking further action. Rather, the commissioner may assess the tax, demand payment and enforce collec-

---

1. Respondents raise an immunity defense in their answer, which if successful, would ordinarily bar only damages. *Wood v. Strickland,* 420 U.S. 308, 315 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975). Therefore, this court will consider that portion of Sisson's complaint which prays for injunctive relief based on the statute's constitutionality.

2. Minn.Stat. § 297D.01, subd. 3 (1986), states:

"Dealer" means a person who in violation of Minnesota law manufactures, produces, ships, transports, or imports into Minnesota or in any manner acquires or possesses more than 42½ grams of marijuana, or seven or more grams of any controlled substance, or ten or more dosage units of any controlled substance which is not sold by weight.

tion immediately.[3] The seized property may be sold during the time an appeal of the assessment may be filed or while the appeal is pending. Minn.Stat. § 297D.12, subd. 1 (1986); Minn.Stat. § 270.70, subd. 4 (1986). However, a person whose property is sold may obtain the proceeds of the sale should the commissioner's assessment be reversed. Minn.Stat. § 270.709, subd. 2(c) (1986). Because the act incorporates Minn. Stat. § 270.70 (1986), certain equitable remedies are also available to the taxpayer. For example, although § 297D.12, subd. 2 provides that injunctions against the assessment or collection of any taxes or penalties are prohibited, a taxpayer can obtain injunctive relief to prevent irreparable injury. Minn.Stat. § 270.70, subd. 7 (1986). The taxpayer can also obtain release of the levied property upon such equitable terms and conditions as the court determines. *Id.*, subd. 12. Finally, a person may obtain relief from an actual or potential seizure and/or sale by posting a surety bond or other security. *Id.*, subd. 6.

The only requirement for issuance of the stamps is payment of the appropriate tax. Affidavit of Don Trimble, Acting Manager of Alcohol, Tobacco and Special Taxes Unit, Minn. Dept. of Revenue, Jan. 9, 1987. It is not required that the stamps be purchased by the dealer himself or that the purchaser appear in person. *Id.* Although chapter 297D does not provide immunity to a dealer from criminal prosecution, any information which is supplied to the Department of Revenue cannot be disclosed and its use in a criminal proceeding is barred. Minn.Stat. § 297D.13 (1986).[4] Any dealer who fails to pay the tax is liable both for the tax and a 100% penalty. Minn.Stat. § 297D.09, subd. 1 (1986).

## II.

█ The first issue to be decided is whether Minn.Stat. ch. 297D (1986) denies

procedural due process as required by the fourteenth amendment to the United States Constitution and article I, section 7 of the Minnesota State Constitution. We conclude that it does not. The basic requirements of those due process clauses are notice and an opportunity for a hearing appropriate to the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The right to notice and the opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

In the present case, Sisson argues that Minn.Stat. ch. 297D (1986) is constitutionally defective because it fails to provide a meaningful hearing. He asserts that the statute provides no opportunity to litigate the basis for the tax assessment. He also argues that the statute's incorporation of equitable provisions contained in Minn.Stat. § 279.70, subds. 6, 7, 12 (1986) does not rescue it from unconstitutionality because they do not allow an opportunity to actually litigate the taxpayer's liability.

He claims that the district court, in reaching the opposite conclusion, relied erroneously on *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), a United States Supreme Court case which involved neither a jeopardy assessment nor irreparable injury to the taxpayer. He points out that the United States Supreme Court has specifically held *Phillips* inapplicable to cases where jeopardy assessments would cause irreparable injuries. *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614,

---

**3.** These procedures are similar to provisions for jeopardy assessment and collection of certain other types of taxes. *See, e.g.,* Minn.Stat. § 290.48 (1986) (income tax); Minn.Stat. § 297A.33, subd. 2 (1986) (sales tax). *See also* Minn.Stat. § 270.70, subd. 2 (1986) (levies generally).

**4.** Minn.Stat. § 297D.13 (1986) provides:

Neither the commissioner nor a public employee may reveal facts contained in a report or return required by this chapter, nor can any information contained in such a report or return be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this chapter from the taxpayer making the return.

631–32, 96 S.Ct. 1062, 1072–73, 47 L.Ed.2d 278 (1976). Like the plaintiff in *Shapiro*, Sisson claims irreparable injury because he has been deprived of the use and enjoyment of his property, and argues that *Shapiro* should govern the present case.

■ Although Sisson is correct that *Phillips* did not involve a jeopardy assessment, that case simply stands for the undisputed principle that a taxing authority can seize property prior to a hearing on the validity of the tax. In *Phillips*, the plaintiff was a transferee of a dissolved corporation's tax liability. He challenged the constituitonality of a statute which allowed the government to assess and collect taxes before judicial review of the liability occurred. In upholding the right of the government to proceed summarily against a taxpayer, the Court reasoned that "[d]elay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied." *Phillips*, 283 U.S. at 597, 51 S.Ct. at 611. The Court gave other examples of justifiable summary proceedings: destruction of property causing a public health hazard; seizure of property needed in wartime; property acquired by eminent domain. *Id.* Thus, *Phillips* stands for the proposition that mere postponement of a hearing until after seizure of the property is not a denial of due process, "if the opportunity given for the ultimate judicial determination of the liability is adequate." *Id.* at 596–597, 51 S.Ct. at 611. The Court found that the alternative remedies offered by the statute, a suit for a refund or immediate redetermination of liability by the tax court, were adequate. *Id.* at 597–98, 51 S.Ct. at 611–12.

The *Shapiro* case, on the other hand, did involve a jeopardy assessment. In *Shapiro*, the commissioner of internal revenue determined that Shapiro's imminent departure for Israel under an extradition order to stand trial for criminal charges jeopar-

dized the agency's collection of income taxes. Thus, the commissioner made a jeopardy assessment, filed liens and served notices of levy on various banks. Shapiro brought suit either to enjoin his extradition or, alternatively, to enjoin the jeopardy assessment. The Supreme Court determined that the injunction would be legitimately barred by the federal Anti–Injunction Act, 26 U.S.C. § 7421(a) unless Shapiro's case fell within the exception to the act formulated in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).[5]

Contrary to Sisson's assertions, however, the *Shapiro* court did not dismiss the *Phillips* case as wholly inapplicable to jeopardy assessment. Rather, the *Shapiro* court quoted and emphasized those portions of the *Phillips* dicta most relevant to the concerns in *Shapiro*:

> *Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights,* summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained.
>
> \*    \*    \*    \*    \*    \*
>
> Where only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, *if the opportunity given for the ultimate judicial determination of the liability is adequate* \* \* \*.

*Shapiro*, 424 U.S. at 631–632, 96 S.Ct. at 1073; (quoting *Phillips*, 283 U.S. at 595, 596–597, 51 S.Ct. at 611, 611 (emphasis in original)). The *Shapiro* court went on to point out that "neither the holding nor the dicta in *Phillips* support the proposition that the tax collector may constitutionally seize a taxpayer's assets without showing some basis for the seizure *under circumstances in which the seizure will injure the taxpayer in a way that cannot be adequately remedied by a Tax Court*

**5.** The *Shapiro* court held that relief from the federal Anti–Injunction Act could only be granted where:

(1) [I]t is 'clear that under no circumstances could the government ultimately prevail' and

(2) '[E]quity jurisdiction' otherwise exists, i.e., the taxpayer shows that he would otherwise suffer irreparable injury.

*Shapiro*, 424 U.S. at 627, 96 S.Ct. at 1070 (quoting, *Enochs v. Williams Packing Company*, 370 U.S. at 7, 82 S.Ct. at 1129).

*judgment in his favor." Shapiro*, 424 U.S. at 632, 96 S.Ct. at 1073 (emphasis added).

The *Shapiro* court was focusing on factors which were peculiarly relevant to that case. The Court noted that *Shapiro* had no right to start a proceeding before a tax court for 60 days following the jeopardy seizure. *Shapiro*, 424 U.S. at 630, n. 12, 96 S.Ct. at 1072, n. 12. In fact, the IRS under the statute could wait 60 days before issuing Shapiro a deficiency notice which would, in effect, give him his "ticket to the tax court." *Id., citing to* 26 U.S.C. § 6861. Further, the actual seizure of his funds caused Shapiro irreparable injury because without money, he could not litigate his tax liability. Thus, without money, his only remedy was wholly unavailable.

In contrast, the seizure of Sisson's assets has not prevented him from pursuing any of his remedies. Therefore, the seizure itself cannot be said to have caused irreparable injury. The district court determined that only the sale of Sisson's property might cause irreparable injury as Sisson was not likely to recover the reasonable market value for the property in a successful suit for refund. Unlike *Shapiro* then, irreparable injury might result here only from Sisson's assets being sold, not seized.

Further, Sisson is entitled to directly appeal the commissioner's assessment to the Minnesota Tax Court within 60 days from the date of his notice. Minn.Stat. § 271.06, subds. 1, 2 (1986). Only when the tax court proceedings and subsequent appeals are concluded will Sisson be finally deprived of any assets levied upon and held by the commissioner. With respect to any assets sold prior to this final determination, Sisson has the right to return of the proceeds of the sale in the event that the commissioner's assessment is reversed. Minn. Stat. § 270.709 (1986). Finally, Minn.Stat. § 297D.12 incorporates by reference the levy and sale provisions of section 270.70, thereby allowing Sisson a number of alternatives for pursuing equitable relief. Indeed, proceeding under section 270.70, subdivision 7, Sisson obtained the currently imposed injunction against the sale of his

property. In addition, the procedures established in Minn.Stat. ch. 297D (1986) do not differ markedly from tax law provisions applicable to sales (Minn.Stat. § 297A.33 (1986)) and income/excise taxes (Minn.Stat. § 290.48 (1986)). Those taxes also authorize jeopardy assessments, contain anti-injunction provisions, and allow the commissioner to proceed on the basis of his own knowledge and information.

Furthermore, Minnesota provisions for equitable relief present a lower barrier to obtaining an injunction than exists within the federal courts. As previously noted, the United States Supreme Court has adopted a two-step test by which to establish an exception to the federal Anti–Injunction Act. *See* footnote 5, *supra*. Under this exception, equity considerations are secondary, and tax collections will not be enjoined merely because the collection would cause irreparable injury, "such as the ruination of the taxpayer's enterprise." *Enochs*, 370 U.S. at 6, 82 S.Ct. at 1129. In contrast, Minn.Stat. § 270.70, subd. 7 (1986), focuses on the harm to the taxpayer and allows an injunction where levy or sale "would irreparably injure rights in property which the court determines to be superior to rights of the state in such property * * *." Minn.Stat. § 270.70, subd. 7 (1986).

In summary, Sisson is arguing that the statute is constitutionally defective because it fails to provide any meaningful hearing. Under *Phillips*, however, a hearing need not take place before a seizure of assets. Further, under *Shapiro*, a prompt judicial inquiry must occur only when the injury cannot be adequately remedied by a later tax court judgment in the plaintiff's favor. Finally, a remedy is not inadequate because it relegates the taxpayer to a suit for refund.

In the present case, the facts establish that Sisson received notice, was given an opportunity to appeal and did appeal the assessment to the Minnesota Tax Court, and has been able, pursuant to incorporated equitable provisions under Minn.Stat. ch. 297D (1986), to successfully delay the single event that would cause the only ir-

reparable injury that the district court was able to identify. Minn.Stat. ch. 297D (1986) does not deny procedural due process required by the fourteenth amendment to the United States Constitution and article I, section 7 of the Minnesota State Constitution.

### III.

■ We determine next whether Minn. Stat. ch. 297D (1986) violates federal and state constitutional guarantees of substantive due process. This court has held that where an economic regulation is involved:

> Due process demands only that (1) the act serve to promote a public purpose, (2) it is not an unreasonable, arbitrary or capricious interference, and (3) the means chosen bear a rational relation to the public purpose sought to be served.

*Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.1979) (citing *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144, *appeal dismissed sub nom. Heaven Hill Distilleries, Inc. v. Novak*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)). Sisson argues that Minn.Stat. ch. § 297D (1986) violates substantive due process because it fails to provide standards or guidelines which prevent the arbitrary or capricious assessment of a tax against an individual. Further, he asserts that the act allows the commissioner of revenue to assess a tax and seize property solely on the basis of unsubstantiated allegations that a party possesses a taxable amount of a controlled substance.

Sisson does not develop his argument, however, nor does he address the framework we set forth in *Contos* for judging the substantive validity of a statute. Even though the district court interpreted Sisson's argument as embodying a "void for vagueness" concern, the act itself makes clear the standards for determining who is a dealer and what is a controlled substance. Minn.Stat. § 297D.01, subds. 1, 2, 3 (1986). The act does allow the assessment of a tax based on the commissioner's personal knowledge or information, Minn.Stat. § 297D.12, subd. 1 (1986), but this does not differ from statutory provisions governing

the collection of income, excise and sales taxes (*see* Minn.Stat. § 290.48, subd. 4 (1986); Minn.Stat. § 297A.33, subd. 2 (1986)), nor does it allow the commissioner to proceed on the basis of unsubstantiated allegations. Minn.Stat. ch. 297D (1986) does not violate federal and state constitutional guarantees of substantive due process.

### IV.

■ The final issue is whether Minn. Stat. ch. 297D (1986) violates an individual's right against self-incrimination as contained in the fifth and fourteenth amendments to the United States Constitution and article I, section 7 of the Minnesota State Constitution.

The United States Supreme Court has considered the impact of tax laws on fifth amendment guarantees against self-incrimination in a trio of cases decided in the late 1960's. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). The Court identified the following criteria for determining the constitutionality of a tax statute challenged on fifth amendment grounds: (1) whether the regulated activity is in an area "permeated with criminal statutes," and the tax aimed at individuals "inherently suspect of criminal activities," *Marchetti*, 390 U.S. at 47, 88 S.Ct. at 702, (2) whether an individual is required, under pain of criminal prosecution, to provide information which the individual might reasonably suppose would be available to prosecuting authorities, *id.* at 48, 88 S.Ct. at 702, (3) whether such information would prove a significant link in a chain of evidence tending to establish guilt. *Id.* The Court noted that "[t]he central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Id.* at 53, 88 S.Ct. at 705.

Sisson claims that the trial court, in finding that the second and third elements of the *Marchetti* test were absent in the

present case, erred in two ways. First, he argues that the purchase of a drug tax stamp is in itself a compelled inculpatory act; i.e., the physical act of a dealer presenting him or herself at the revenue department offices for the purpose of purchasing a stamp constitutes a compelled disclosure of information. Further, even if a dealer obtains the stamps by mail or by courier, he is required to disclose his address and status as a dealer. He would also be subjecting a courier to a charge of criminal conspiracy under Minn.Stat. § 609.175 (1986).[6] Second, Sisson maintains that the stamp itself is information which could prove to be a significant link in an evidence chain. He points out that Minn.Stat. ch. 297D (1986) does not prohibit use of drug tax stamps against an individual in a criminal proceeding.[7]

In *Marchetti*, the Supreme Court reaffirmed the longstanding rule that the congress can tax an unlawful activity. *Marchetti*, 390 U.S. at 42, 88 S.Ct. at 699. The issue raised in that case, as well as in *Grosso* and *Leary*, was whether the methods employed by the congress were constitutionally defensible. *Marchetti* and *Grosso*, which were argued together, concerned the wagering tax system; *Leary* involved the federal Marihuana Tax Act, 26 U.S.C. §§ 4741–4746 (1954) (repealed 1970).

In *Marchetti* and *Grosso*, the Supreme Court reviewed the provisions of the wagering tax law system. The Court noted first that section 4401 of title 26 imposed an excise tax on all accepted wagers. *Marchetti*, 390 U.S. at 42, 88 S.Ct. at 699. Those liable for payment of that tax were required to submit monthly returns which detailed the taxpayer's wagering activities.

*Grosso*, 390 U.S. at 65, 88 S.Ct. at 712. The Court observed that the congress imposed no restrictions upon the use of this return information, and in fact, the IRS made it a practice to tender the information to prosecuting authorities. *Id.* at 66, 88 S.Ct. at 712. In addition, section 4411 imposed an occupational tax on all bookmakers, and section 4412 required that those liable for the tax register each year, providing the IRS with their residence and business addresses as well as the names and addresses of their employees or agents. *Marchetti*, 390 U.S. at 42, 88 S.Ct. at 699. Moreover, section 6107 required the IRS to furnish prosecuting authorities with the names of those individuals who had paid the occupational tax. *Id.* at 43–44, 88 S.Ct. at 700. When the bookmaker registered and paid the occupational tax, he was issued a stamp which section 6806(c) required that he display "conspicuously" in his place of business, or, lacking such, keep on his person to present upon demand of any treasury officer. *Id.* at 43, 88 S.Ct. at 700.

The Court concluded that every element of the statutory requirements had the consequence of incriminating petitioner. *Id.* at 50, 88 S.Ct. at 704. The Court observed that evidence of possession of a wagering tax stamp, as well as payment of the taxes, had often been admitted at trials in both federal and state gambling prosecutions. Further, the Court noted that a former commissioner of the IRS admitted that the Service made the names and addresses of wagering taxpayers available to law enforcement personnel, and fully cooperated with the U.S. Attorney General's efforts to

---

**6.** We have determined that a conscious and intentional purpose to break the law is an essential element of the crime of conspiracy. *State v. Burns*, 215 Minn. 182, 9 N.W.2d 518 (1943). A person having no knowledge of a conspiracy is not a conspirator. *Id.* at 186, 9 N.W.2d at 521. Thus, it is highly unlikely that an innocent courier could be criminally implicated, and Sisson's argument in this regard appears to be a "trifling" hazard of incrimination. *Marchetti*, 390 U.S. at 54, 88 S.Ct. at 706.

**7.** Congress cured the constitutional deficiencies contained in early wagering tax statutes by enacting 26 U.S.C. § 4424 (1982) subsequent to the

Supreme Court's decisions in *Marchetti* and *Grosso*. That statute provides in part that

"(1) any stamp denoting payment of the special tax under this chapter, * * * shall not be used against such taxpayer in any criminal proceeding."

26 U.S.C. § 4424(c)(1) (1982). Minnesota has no statutory counterpart to this explicit prohibition. However, we will not resolve issues not formally before this court. The possession of drug stamps is not raised by the facts of the present case and Sisson's concern here is purely speculative.

prosecute organized gambling. *Marchetti,* 390 U.S. at 47–48, 88 S.Ct. at 702.

Similarly, in *Leary,* the Court reviewed federal statutes governing traffic in marijuana. That act imposed a tax on marijuana transfers, as well as an occupational tax upon those who dealt in the drug. It required that all marijuana transfers be carried out in pursuance of written order forms obtained by the transferee. *Leary,* 395 U.S. at 14–15, 89 S.Ct. at 1536–37. In addition, it was virtually assured that any information that was included in the order form would be available to law enforcement officials. *Id.* at 15, 89 S.Ct. at 1537. Also, the IRS was required to keep duplicate order forms and make them available for inspection by both treasury personnel and state and local officials charged with enforcement of marijuana laws. *Id.* Upon payment of a fee, such officials could receive copies of the form. The Court determined that transmittal of this information would surely prove a significant link in a chain of evidence tending to establish the petitioner's guilt under both state, and possibly federal, laws, as well. *Leary,* 395 U.S. at 16, 89 S.Ct. at 1537.

In all three cases, the Court refused to avoid constitutional issues and impose use restrictions on information obtained through tax law compliance because it found "that the furnishing of information to interested prosecutors was a 'significant element of Congress' purposes in adopting' the statutes therein involved." *Leary,* 395 U.S. at 26, 89 S.Ct. at 1543 (quoting *Marchetti,* 390 U.S. at 59, 88 S.Ct. at 708). In regard to the Marihuana Tax Act specifically, the Court stated that "we think the conclusion inescapable that the statute was aimed at bringing to light transgressions of the marihuana laws." *Leary,* 395 U.S. at 27, 89 S.Ct. at 1543.

Unlike the federal or state statutes discussed above, Minn.Stat. ch. 297D (1986) contains a confidentiality provision which states:

> Neither the commissioner nor a public employee may reveal facts contained in a report or return required by this chapter, nor can any information contained in such a report or return be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this chapter from the taxpayer making the return.

Minn.Stat. § 297D.13 (1986).[8] In addition, Minnesota Revenue Department regulations explicitly relieve a dealer of submitting any information when purchasing a stamp, and otherwise protect a dealer's anonymity. It is not necessary for a dealer to file in person or to give his name or address when acquiring drug tax stamps. *See* Trimble Affidavit, *supra.* The stamps can be mailed to any address or picked up by any other individual. *Id.* In 1987, these departmental procedures were incorporated into the statutes themselves. Minn.Stat. § 297D.02 (Supp.1987) now provides that dealers are not required to give their name, address or other identifying information. Thus, chapter 297D does not have the constitutional pitfalls which were evident in the federal Marihuana Tax Act or the early wagering tax statutes.

In *Marchetti, Grosso,* and *Leary,* the United States Supreme Court refused to impose restrictions on the government's use of information obtained from the taxpayer because it found that a "significant element of Congress' purposes in adopting" those statutes was the furnishing of

---

8. In 1987 the legislature strengthened the confidentiality provision as follows:
   Disclosure Prohibited. Notwithstanding any law to the contrary, neither the commissioner nor a public employee may reveal facts contained in a report or return required by this chapter or any information obtained from a dealer; nor can any information contained in such a report or return or obtained from a dealer be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this chapter from the dealer making this return.
   Minn.Stat. § 297D.13, subd. 1 (Supp.1987).
   In addition, the 1987 legislature established a penalty for disclosure. Minn.Stat. § 297D.13 (Supp.1987) now provides:
   Subdivision 2. Penalty for Disclosure. Any person violating this section is guilty of a gross misdemeanor.

such information to prosecutors. *Leary,* 395 U.S. at 26, 89 S.Ct. at 1543. A similar purpose is not evident in Minn.Stat. ch. 297D. Under the Minnesota statutes as well as revenue department regulations, a dealer is assured anonymity. Minn.Stat. ch. 297D does not violate rights against self-incrimination protected by the fifth amendment to the United States Constitution and article I, section 7 of the Minnesota State Constitution.

In conclusion, we hold that Minn.Stat. ch. 297D (1986) does not violate procedural or substantive due process rights or the right against self-incrimination guaranteed by the fifth and fourteenth amendments of the United States Constitution and article I, section 7 of the Minnesota State Constitution. We affirm the judgment of the district court granting partial summary judgment for respondents.

AFFIRMED.