Kevin and Monica CLIFFT, Appellants,

v.

INDIANA DEPARTMENT OF STATE REVENUE and Kenneth L. Miller, Commissioner, Appellees.

No. 49S10–9503–TA–331.

Supreme Court of Indiana.

Dec. 27, 1995.

**312**

Andrew C. Maternowski, Indianapolis, for appellant.

Pamela Carter, Attorney General, David A. Arthur, Deputy Attorney General, Indianapolis, for appellee.

## ON PETITION FOR REVIEW

SHEPARD, Chief Justice.

A woman and her husband were arrested for criminal drug possession. After their arrest, the State assessed the Indiana Controlled Substance Excise Tax (CSET) against them and the wife pled guilty to misdemeanor drug possession. The couple now contends the tax was a second jeopardy in violation of the Double Jeopardy Clause.

### I. Statement of Facts

In October 1992, police executed a search warrant for the home of appellants Monica and Kevin Clifft. During their search, police discovered 927 grams of marijuana.

The police contacted appellee Indiana Department of State Revenue and reported their findings. The Department subsequently assessed the CSET against the Cliffts. Based on the weight of the drug multiplied by the statutorily prescribed rate of $40 per gram, the Department found the Cliffts owed $37,080 in drug taxes. Ind.Code Ann. § 6–7–3–6 (West Supp.1994). It also assessed a 100 percent penalty against the couple for their failure to pay the tax when first possessing the drugs. Ind.Code Ann. § 6–7–3–11 (West Supp.1994). When these sums were combined with administrative charges, the Cliffts' total tax liability was $77,871. Interest immediately began to accrue at the rate of $8.13 per day.

In January 1993, Monica pled guilty to possession of marijuana, a class A misdemeanor. The court ordered her driver's license suspended for six months and directed imprisonment of 365 days, with 363 suspended. The State dropped its charges against Kevin.

The Cliffts subsequently appealed the Department's CSET assessment to the Indiana Tax Court. The couple claimed the CSET violated their double jeopardy, due process

and equal protection rights, as well as their privilege against self-incrimination. After a hearing on the merits, the court concluded that the CSET assessment was Monica's second jeopardy, but found Kevin had not twice been placed in jeopardy. It therefore reversed the assessment against Monica. The court further determined that the CSET did not violate the couple's due process, equal protection and self-incrimination rights. *Clifft v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 641 N.E.2d 682.

The Cliffts' petitioned this Court for review of their due process and self-incrimination claims. The Department petitioned for review of the double jeopardy issue. We held oral argument and granted review as to all three issues. Consequently, we now consider:

1. Whether the imposition of the CSET was a second jeopardy in violation of the Cliffts' double jeopardy rights afforded by the Fifth Amendment of the United States Constitution;

2. Whether the CSET violates the privilege against self-incrimination embodied in the Fifth Amendment to the U.S. Constitution; and,

3. Whether the CSET violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

We hold that the CSET was Monica and Kevin's first jeopardy. Monica's criminal conviction for possession was therefore her second jeopardy, and it was barred by the Double Jeopardy Clause. No second jeopardy occurred in Kevin's case; therefore, his double jeopardy rights were not violated. We further conclude that the CSET violates neither the Cliffts' privilege against self-incrimination nor their due process rights.

## II. Standard of Review

■ Decisions of the Indiana Tax Court are entitled to a presumption of validity on appellate review. *USAir, Inc. v. Indiana Dep't of State Revenue* (1991), Ind., 582 N.E.2d 777; Ind.Tax Court Rule 10. We

affirm the Tax Court's decision unless, after reviewing the record as a whole, this Court "is left with the definite and firm conviction that a mistake was made, even though there was some evidence to support the finding below." *USAir,* 582 N.E.2d at 778. In such a case, the findings of the Tax Court are clearly erroneous and are thus reversible. *Indiana Dep't of State Rev. v. Bethlehem Steel Corp.* (1994), 639 N.E.2d 264.

## III. Double Jeopardy

■ Like the appellant in today's case of *Bryant v. State* (1995), Ind., 660 N.E.2d 290, the Cliffts argue that the CSET assessment was their second jeopardy in violation of the Double Jeopardy Clause. U.S. CONST. amend. V. Our holding from *Bryant* thus applies: the CSET is a punishment and thus a jeopardy for double jeopardy purposes which attaches at the moment of assessment.

Because the State assessed the CSET and its 100 percent penalty against Monica and then convicted her in a separate proceeding under the criminal law for the same drug offense, she was twice placed in jeopardy. Accordingly, the second jeopardy, Monica's criminal conviction, is contrary to the Double Jeopardy Clause. Her CSET liability does not violate the Double Jeopardy Clause.

Kevin did not suffer multiple jeopardies for the same offense. The State assessed the CSET against him, but did not follow that assessment with any criminal action. He therefore cannot be said to have twice been placed in jeopardy.

## IV. Self–Incrimination

The Cliffts claim the CSET violates a taxpayer's privilege against self-incrimination awarded by the Fifth Amendment to the U.S. Constitution.[1] The couple argues that by virtue of the fact that a taxpayer must present herself in the Department's office when paying the CSET, she is forced to incriminate herself. We disagree.

■ The Fifth Amendment provides that no person shall be compelled to be a

---

1. Before the Tax Court, the Cliffts also claimed that the CSET violated their privilege against self-incrimination under the Indiana Constitu-

tion. IND.CONST., art. I, § 14. They do not raise this issue in their Petition for Review.

witness against himself. U.S. CONST. amend. V. This privilege is applicable to the states through the Fourteenth Amendment Due Process Clause and is afforded " 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.' " *Maness v. Meyers,* 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975) (quoting *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972)). As a result of this privilege, our jurisprudential system follows the maxim *nemo tentur prodere:* No person is bound to accuse himself. Ann.L.Iijima, *The War on Drugs: The Privilege Against Self-Incrimination Falls Victim to State Taxation of Controlled Substances,* 29 Harv.C.R.-C.L.L.Rev. 101, 103 (1994). This maxim unquestionably underlies the foundation of our accusatorial judicial system, which requires the state to pursue its prosecution by questioning witnesses other than the defendant and dictates that the defendant is not required to assist the prosecution in its case against her. *Id.*

■ Taxes like Indiana's CSET are not altogether novel and, accordingly, neither are challenges to them under a self-incrimination theory.[2] Defendants using the Fifth Amendment privilege against self-incrimination have challenged CSET-style taxes in Minnesota,[3] Florida,[4] South Dakota,[5] Kansas,[6] Utah[7] and elsewhere. These courts rightly evaluate their drug taxes under the self-incrimination analysis developed by the U.S. Supreme Court in the *Marchetti/Grosso* series of cases. This analysis requires courts to consider:

(1) Whether the activity being taxed is in an area "permeated with criminal statutes" and whether the tax is aimed at individuals who are "inherently suspect of criminal activities";

(2) Whether the procedure requires the individual to give information which would reasonably be expected to be available to police; and,

(3) Whether the data provided by the individual would constitute a significant link in the chain of evidence helping to establish guilt.

*See Marchetti v. United States,* 390 U.S. 39, 47–48, 88 S.Ct. 697, 702–703, 19 L.Ed.2d 889 (1968) (quoting *Albertson v. Subversive Activities Control Bd.,* 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965)); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (conviction for failure to pay tax under Marijuana Tax Act violates privilege); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (conviction for failure to pay wagering excise tax violated privilege).

■ There are two final considerations which this Court must consider when apply-

**2.** Numerous states have enacted CSET-like taxes. ALA.CODE §§ 40–17A–1 to –16 (Michie Supp.1994) ("Drugs and Controlled Substances Excise Tax"); ARIZ.REV.STAT.ANN. §§ 42–1201 to –18 (West 1994) ("Luxury Privilege Tax"); COLO.REV.STAT.ANN. §§ 39–28.7–101 to –9 (Bradford Supp.1994) ("Controlled Substances Tax"); FLA.STAT.ANN. § 212.0505 (West Supp.1995); GA.CODE ANN. §§ 48–15–1 to –11 (Harrison Supp.1994); IDAHO CODE §§ 63–4201 to –11 (Michie Supp.1994) ("Illegal Drug Tax Act"); ILL.ANN.STAT. ch. 35 ILCS 520/1 to –26 (Smith–Hurd 1995) ("Cannabis and Controlled Substances Tax Act"); KAN.STAT.ANN. §§ 79–5201 to –12 (1994) ("Marijuana and Controlled Substances Tax"); ME.REV.STAT.ANN. tit. 36 §§ 4433 to –6 (West 1994) ("Illegal Drug Tax"; imposed only after a conviction for illegal possession); MINN.STAT.ANN. §§ 297D.01 to .14 (West 1995) ("Marijuana and Controlled Substance Taxation"); MONT.CODE ANN. §§ 15–25–101 –23 (1993) ("Dangerous Drug Tax"); NEB.REV.STAT. §§ 77–4301 to –16 (1993) ("Marijuana and Controlled Substances Tax"); OKLA.STAT.ANN. tit. 68 §§ 450.1 to .9 (West Supp.1994) ("Controlled Dangerous Substance Tax"); R.I. GEN.LAWS §§ 44–49–1 to –15 (Michie Supp.1994) ("Taxation of Marijuana and Other Controlled Substances"); TEX.TAX CODE ANN §§ 159.001 to .301 (West Supp.1995) ("Controlled Substances Tax"); UTAH CODE ANN. §§ 59–19–101 to –7 (Michie Supp.1994) ("Illegal Drug Stamp Tax Act"); WIS.STAT.ANN. §§ 139.87 to .96 (West Supp.1994) ("Tax on Controlled Substances"); WYO.STAT. § 39–6–405(a)(xix) (1994) ("Sales Tax").

**3.** *Sisson v. Triplett,* 428 N.W.2d 565 (Minn.1988).

**4.** *Florida Dept of Revenue v. Herre,* 634 So.2d 618 (Fla.1994).

**5.** *State v. Roberts,* 384 N.W.2d 688 (S.D.1986).

**6.** *State v. Durrant,* 244 Kan. 522, 769 P.2d 1174 (1989), *cert. denied,* 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600.

**7.** *State v. Davis,* 787 P.2d 517 (Utah App.1990).

ing the *Marchetti* test. First, the privilege may only be invoked when the threat of incriminating oneself is "real and appreciable" and not merely "imaginary and unsubstantial." *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 702. Second, where available statutory protection is broad enough to encompass the same protection afforded by the Fifth Amendment, an individual cannot successfully assert the Amendment's privilege. *Id.* at 58, 88 S.Ct. at 707–708 (citing *Counselman v. Hitchcock*, 142 U.S. 547, 585, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) ("[L]egislation cannot abridge a constitutional privilege ... unless it is so broad as to have the same extent and scope and effect.")).[8]

Through applying the *Marchetti* test to various taxes on illegal activities, the U.S. Supreme Court has voided CSET-style assessments on wagering, illegal firearms, and controlled substances on the grounds that they violate a taxpayer's privilege against self-incrimination. *Grosso*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Leary*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. In each of these cases, the Supreme Court found the *Marchetti* test was satisfied because a real and substantial risk of self-incrimination existed. Information required to be disclosed in *Grosso*, *Haynes*, and *Leary* included various combinations of a taxpayer's name, home and business addresses, social security number, admissions that the taxpayer is conducting an illegal activity, names and addresses of patrons, an income return disclosing the illegal activity, and a record of the taxpayer's felony convictions. The Supreme Court found these statutes compelled self-incrimination because they required the disclosure of identifying and incriminating information that was then made available to law enforcement authorities. *Grosso*, 390 U.S. at 65–66, 88 S.Ct. at 712–13; *Haynes*, 390 U.S. at 96, 88 S.Ct. at 730; *Leary*, 395 U.S. at 14–15, 89 S.Ct. at 1536–37.

State courts applying the identical rationale to drug tax cases have reached an identical conclusion. *See, e.g., Briney v. State Dep't. of Revenue*, 594 So.2d 120 (Ala.Civ. App.1991). Application of the *Marchetti* test to the CSET therefore directs our focus to the disclosure of information compelled at the time of payment and whether that information is, or could be, distributed to police.

The CSET easily meets the first prong of *Marchetti* because it is imposed in an area permeated with criminal statutes and is aimed at individuals who are inherently suspected of illegally possessing, manufacturing and distributing controlled substances. The question thus becomes whether the information disclosed when a taxpayer pays the CSET is turned over to police and whether that information constitutes a "significant link" in the chain of evidence to establish guilt.

■ The second prong of the *Marchetti* test is satisfied by the CSET because information disclosed by a taxpayer is not and cannot be revealed to law enforcement authorities for any purpose other than tax collection. Ind.Code Ann. § 6–8.1–7–1 (West Supp.1994). Section 6–8.1–7–1 prohibits the Department and its agents from divulging the amount of tax paid, any investigative reports or records or any other information disclosed by the reports filed under the provisions of law relating to the CSET when it is agreed that the information is to be confidential and to be used solely for official purposes. *Id.* Any such divulgence is a class C misdemeanor and grounds for immediate dismissal. Ind.Code Ann. § 6–8.1–7–3 (West Supp.1994).

The Cliffts allege that § 6–8.1–7–1 does not apply to the CSET and that, even if it did, information disclosed by the CSET payor cannot fall within its confidentiality requirement because the CSET does not "generate information which could be disclosed on reports or obtained from federal re-

---

**8.** The issue examined today was long ago noticed by this Court when it decided *Wilkins v. Malone* (1860), 14 Ind. 153, an opinion relied upon by the U.S. Supreme Court in resolving *Counselman*. In *Wilkins*, we said: "Literally, this provision extends to criminal prosecutions only, and not to civil actions; but we think its spirit and intent go much farther, and protect a person from a compulsory disclosure, in a civil suit, of facts tending to criminate the party, wherever his answer could be given in evidence against him in a subsequent criminal prosecution."

turns...." *Memorandum in Support of Summary Judgment,* p. 10. We cannot agree. Because the legislature included the CSET as a listed tax within § 6–8.1–1–1, information disclosed when paying the CSET is subject to § 6–8.1–7–1's confidentiality provision. Moreover, § 6–8.1–7–1's sweeping language prohibiting disclosure of "any other information" inherently includes *any* information a CSET payor discloses to the Department. As such, information disclosed when paying the CSET is strictly confidential.

Ultimately, it is evident that the legislature recognized the CSET's potential self-incrimination violations and sought to avoid them by requiring that the data collected by the Department be kept confidential. The legislature went out of its way to ensure this confidentiality by ordering a punishment for disclosure, Ind.Code § 6–8.1–7–3, and by simultaneously removing any incentive to disclose the information by providing that it cannot be used to "initiate or facilitate" the taxpayer's prosecution, Ind.Code Ann. § 6–7–3–9. We believe the privilege against self-incrimination requires no more.

The larger issue is therefore whether information required to be disclosed when paying the CSET could constitute a significant "link in a chain of evidence" to establish the taxpayer's guilt. *Marchetti,* 390 U.S. at 48, 88 S.Ct. at 703. The Cliffts claim that the statute requires taxpayers to present themselves physically before Department authorities when paying the CSET. They contend this presence is, in and of itself, compelled self-incrimination. We cannot agree.

■ We determine what must be disclosed when paying the CSET by looking at the statute's plain language. Our objective is to determine and effect legislative intent. *Spaulding v. International Bakers Serv.* (1990), Ind., 550 N.E.2d 307. We ascertain and implement legislative intent by " 'giving effect to the ordinary and plain meaning of the language used in the statute.' " *Helton v. State* (1993), Ind.App., 624 N.E.2d 499. The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. *Foremost Life*

*Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092. Within this analysis, we give words their common and ordinary meaning, without " 'overemphasizing a strict literal or selective reading of individual words.' " *Spaulding,* at 307 (quoting *Foremost,* 274 Ind. at 186, 409 N.E.2d at 1096).

■ The language of the CSET reveals the fallaciousness of the Cliffts' claim that the statute compels self-incrimination by requiring a taxpayer's presence before Department employees. On the contrary, the statute does not require a taxpayer's presence because the CSET may be paid by an *agent* of the taxpayer. The CSET's grant of this authority occurs in § 6–7–3–8 which provides that the tax is due when, *"the person receives delivery of, takes possession of, or manufactures a controlled substance in violation of IC 35–48–4 or 21 U.S.C. 841 through 852,"* but also explains that, *"[a] person may not be required to reveal the person's identity at the time the tax is paid."* Ind.Code Ann. § 6–7–3–8 (emphasis added). As the Tax Court correctly explained, this language does not state *who* is required to tender the tax due but, rather, states *when* the tax is due. Moreover, "the juxtaposition of an indefinite article ("a") to modify who 'may not be required to reveal,' and a definite article ("the") to modify whose 'identity' may not be revealed," necessary includes the possibility that *anyone* can pay the tax. *Clifft,* 641 N.E.2d at 687 (quoting Ind.Code § 6–7–3–8). A drug possessor may, accordingly, empower another to pay the tax on his behalf and thereby disclose nothing to Department authorities.

It is also "just as important to recognize what the statute *does not* say as it is to recognize what it *does* say" when evaluating whether the information required to be disclosed under the CSET constitutes a "significant link." *Irmscher v. McCue* (1987), Ind. App., 504 N.E.2d 1034, 1037 (citing *Charles W. Smith & Sons, Inc. v. Lichtefeld–Massaro* (1985), Ind.App., 477 N.E.2d 308, 310) (emphasis added). The CSET does not require the payor to disclose the identity of the person in possession of drugs, nor does it require the disclosure of the address or telephone number of the possessor. Ind.Code

Ann. § 6–7–3–8 (West Supp.1994). Furthermore, it does not require the payor to reveal his driver's license or other identification, social security number, details of the possession, manufacture or sale of drugs, location of the controlled substances or any other incriminating information. The only data the taxpayer must reveal is the particular amounts of specific drugs listed within the statute which he or his agent possesses. This is required because it is the means by which the CSET may be calculated. Ind. Code § 6–7–3–6. Aside from this divulgence, however, the taxpayer is required to do no more than pay the CSET by some means. This is markedly different from the strict disclosure requirements found in *Marchetti, Grosso, Haynes* and *Leary*.

■ Because the CSET satisfies the three prongs of the *Marchetti* test, there is no "real and appreciable" risk of self-incrimination in violation of the Fifth Amendment. If such a risk did exist, *Marchetti* would require this Court to evaluate whether some other protection existed which was broad enough to encompass the Fifth Amendment protection. *Marchetti*, 390 U.S. at 58, 88 S.Ct. at 707–708. We conclude, as did the Tax Court, that the CSET provides this equivalent protection by affording taxpayers both use and derivative use immunity. Ind. Code Ann. § 6–7–3–9. Because our conclusion is identical to that of the Tax Court, we summarily affirm its opinion on the immunity issue. Ind.Appellate Rules 11(B)(3) & 18(H)(2).

### V. Due Process

The Cliffts next argue that the CSET does not provide the procedural due process demanded by the Fourteenth Amendment to the U.S. Constitution. They claim the CSET unconstitutionally allows the Department to seize property before providing notice or an opportunity for a hearing.[9]

9. The Department assessed the CSET against the Cliffts on November 9, 1992. The couple protested this assessment and received an administrative hearing on March 5, 1993. As a result of this proceeding, the Department affirmed the assessment in its May 12 findings and the Cliffts appealed to the Tax Court. The Tax Court found no evidence that the Department had ever at-

The Department's CSET assessment is a "jeopardy assessment." Ind.Code Ann. § 6–7–3–13 (West Supp.1994). Consequently, the Department may immediately utilize collection efforts normally available only after providing notice and an opportunity for the taxpayer to be heard. *Id.* (cross-referencing Ind.Code Ann. § 6–8.1–5–3 (West Supp. 1994)). The Department may, for example, demand payment of the CSET and, where payment is not instantly rendered, may immediately levy on and seize the taxpayer's property. It may then sell the property to satisfy the CSET liability, even where an appeal is pending. Ind.Code § 6–8.1–5–3.

On the other hand, the CSET does provide due process opportunities *after* the Department has issued an assessment. Once assessment occurs, a taxpayer may protest his CSET liability to the Department. It, in turn, conducts an administrative hearing within which the taxpayer may present evidence and make his case. Ind.Code Ann. § 6–8.1–5–1 (West Supp.1994). Some time after the hearing, the Department issues its findings, upon which a dissatisfied taxpayer may base his appeal to the Tax Court. Because the Department has the authority to begin its collection efforts immediately after assessment, however, these administrative and judicial hearings normally occur after the taxpayer has been deprived of his property.

The taxpayer also possesses a simultaneous opportunity to seek the equitable remedy of injunctive relief. Ind.Code Ann. § 33–3–5–11 (West Supp.1994). Through this remedy, the taxpayer may enjoin the Department from its collection of her property pending her original tax appeal. *See, e.g., Keller v. Indiana Dep't. of State Revenue* (1988), Ind.Tax, 530 N.E.2d 787.

■ The question of whether the CSET affords a taxpayer procedural due

tempted to collect the CSET owed by the Cliffts. As such, the Cliffts "received an administrative hearing and judicial review prior to suffering any deprivation of their property ..." *Clifft*, 641 N.E.2d at 691. This lack of collection is not, however, determinative of their due process claim.

process depends directly on the scope of the Due Process Clause. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). This requirement is imposed in judicial, governmental and agency actions. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Accordingly, the Due Process Clause ensures that, in different situations entailing different procedures, individuals are guaranteed government proceedings which are fair and impartial. *Id.*

■ Traditional notions of due process enunciated by the U.S. Supreme Court required notice and a hearing *before* a creditor's seizure of disputed property. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Today, however, courts frequently conclude that liberty and property interests are adequately protected by procedures imposed *after* the government deprivation acts against the property. *See, e.g., Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) (levy on assets to secure payment of jeopardy assessment permitted when taxpayer given prompt hearing for injunctive relief against levy); *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988). This shift is presumably due to the Supreme Court's conclusion that due process is not "a technical conception with a fixed content unrelated to time, place and circumstances," but rather is a principle which should be flexibly applied, depending on the particular situation. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902. As such, where property rights are involved, mere postponement of the opportunity to be heard is not a denial of due process if the opportunity ultimately given is adequate. *Shapiro*, 424 U.S. 614, 631–32, 96 S.Ct. 1062, 1072–73, 47 L.Ed.2d 278 (citing *Phillips v. Commissioner*, 283 U.S. 589, 595, 596–97, 51 S.Ct. 608, 611, 611–12, 75 L.Ed. 1289).

■ By including the CSET in the category of assessments which the Department may immediately collect, the legislature has classified this area as one in which the magnitude of the government's need to take action without administrative delay justifies the temporary deprivation of property which may occur. We agree with this conclusion and the Cliffts have presented no evidence upon which we may base a contrary assertion. Moreover, the CSET does not deny, but merely postpones, due process opportunities by providing a full and fair opportunity to be heard post-deprivation, when the taxpayer protests his assessment. The Department's subsequent hearing on the protest is the taxpayer's opportunity to challenge the validity of the tax and to have property wrongly taken returned or to be refunded its value if it has been sold. The taxpayer receives a further opportunity to be heard when she seeks judicial review of the assessment through an original appeal to the Tax Court. All the while, from the moment of assessment to final appeal, the taxpayer also possesses the right to block collection efforts by seeking injunctive relief.

We conclude that these procedures afford review in a meaningful time and in a meaningful manner which comports with the Fourteenth Amendment. The Cliffts' due process rights were not violated.

### VI. Conclusion

We therefore affirm the decision of the Tax Court in all respects except its conclusion that Monica's CSET liability was barred as a second jeopardy. We reverse as to this issue and reinstate the civil penalties assessed against her.

DICKSON and SELBY, JJ., concur.

DeBRULER, J., concurs in result and dissents with separate opinion to follow.

SULLIVAN, J., concurs and dissents with separate opinion.

SULLIVAN, Justice, concurring and dissenting.

As explained in *part II* of my dissent today in *Bryant v. State* (1995), Ind., 660 N.E.2d 290 (Sullivan, J., dissenting), I believe the majority errs in holding that an administrative assessment of a tax can constitute a first

punishment for double jeopardy purposes.[10] As such, I believe that Monica Clifft's criminal conviction is not contrary to the Double Jeopardy Clause. However, payment of the CSET assessed would constitute a second punishment of Monica Clifft and would therefore be barred by *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (tax on the possession of illegal drugs assessed after the state has imposed a criminal penalty for the same conduct violated Double Jeopardy Clause).

I agree with the majority that no second jeopardy occurred in Kevin Clifft's case and that the CSET violates neither the Cliffts' privilege against self-incrimination nor their due process rights.

DeBRULER, J., concurring in result and dissenting with opinion.

I concur in sections II, IV, and V. I cannot agree with section III, which states the court's holding that the jeopardy assessment for tax and penalty which preceded Monica Clifft's guilty plea to illegal possession of marijuana constituted a first punishment jeopardy under the Double Jeopardy Clause and that her conviction upon a plea of guilty violated the Double Jeopardy Clause. *See Bryant v. State* (1995), Ind., 660 N.E.2d 290 (DeBruler, J., concurring and dissenting). As I understand the record, the Cliffts have to date been subject to no collection efforts and have paid none of the tax. In light of the conclusion of this appeal, this case will now continue in the Tax Court for consideration of the other constitutional claims made by the Cliffts. I concur in that result.

**10.** If we were to proceed under the alternative approach I describe in *part III* of my *Bryant* dissent, I would remand to the Tax Court for determination of when jeopardy attached, *i.e.*, when evidence was first presented to a trier of

fact in the Cliffts' contest of the assessment. If that occurred prior to jeopardy attaching in Monica Clifft's criminal prosecution, then the result would be the same as the majority reaches here.