**Edward B. WRIGHT and Peggy F. Wright, Appellants–Defendants,**

v.

**CLAY TOWNSHIP REGIONAL WASTE DISTRICT, Appellees–Plaintiffs.**

No. 29A05–9706–CV–240.

Court of Appeals of Indiana.

May 28, 1998.

Douglas D. Church, Church, Church, Hittle & Antrim, Noblesville, for Appellants–Defendants.

Anne Hensley Poindexter, Deborah L. Farmer, Campbell Kyle Proffitt, Carmel, for Appellees–Plaintiffs.

## OPINION

STATON, Judge.

Edward and Peggy Wright appeal from an order requiring them to connect their home to the Clay Township Regional Waste District's ("District") sewer line. The Wrights present four issues which we restate as:

I. Whether the trial court erred by finding that the Wrights' property was within 300 feet of a sewer line.

II. Whether the Wrights may avoid connecting to the District's sewer by redrawing their property line.

III. Whether the Wrights were denied due process.

IV. Whether the Wrights were denied equal protection of the law.

We affirm and remand.

The Wrights own 32.5 acres divided into several tracts in Carmel, Indiana.[1] The District is a duly organized waste district under IND.CODE §§ 13–3–2–1 to 2–30. The

Wrights' property is within the area controlled by the District.

Under the authority of IND.CODE § 13–3–2–10(b)(8) (1993), the District may require any owner of sewage producing property to connect to the District's sewer system if the property is within 300 feet of an available sanitary sewer. The District must give written notice of the demand to connect by certified mail at least ninety days before a date for connection stated in the notice. IC 13–3–2–10(b)(8). Too, the District requires fees of $950 for each connection and $2,100 per acre. See IND.CODE § 13–3–2–22 (1993) (allowing sewer districts to levy fees). On May 17, 1991, the District sent the Wrights notice that they were to connect to the District's sewer. The Wrights refused to connect. Pursuant to IND.CODE § 13–3–2–10(b)(9) (1993), the trial court directed the Wrights to connect to the sewer. They appeal.

## I.

### Distance From Sewer Line

As noted above, the District may require the landowner of sewage producing property to connect to its sewer if the property is within 300 feet of an available sanitary sewer. IC 13–3–2–10(b)(8). The Wrights do not dispute that their property is 290.5 feet from a lateral stub that branches off from the main sewer line. However, the Wrights contend that this lateral stub is not a "sanitary sewer" within the meaning of IC 13–3–2–10(b)(8).

The Wrights present two equally unpersuasive arguments. First, they argue that only the main sewer line is to be considered a sanitary sewer line, and that the laterals should not be so considered. The Wrights do correctly note that "sanitary sewer" is not defined. However, we have little difficulty concluding that a lateral sewer line, whose sole function is to convey sewage to the main sewer line, easily falls within the intended meaning of a "sanitary sewer." To hold otherwise would be to ignore the plain and simple meaning of the term. See Clifft v. Indiana Dept. of Revenue, 660 N.E.2d 310

---

1. Pursuant to a divorce decree, Peggy was to transfer her interest in the property to Edward. However, it does not appear that this conveyance was accomplished by the time this action was initiated.

(Ind.1995) (when interpreting statute, words are given their plain and ordinary meaning).

Second, the Wrights advance the interesting proposition that the lateral cannot be considered a "sanitary sewer" since it is not presently carrying sewage. It appears from the record that the only reason this lateral is not currently transporting sewage is due to the fact that no homes are yet connected to it. The lateral line was built for the sole purpose of transporting sewage. A sewer line is no less a sewer line simply because no one has yet used it. We conclude the trial court did not err when it used the lateral sewer stub to calculate the distance from the Wrights' property to the "sanitary sewer."

## II.

### *Redrawing Property Line* [2]

Next, the Wrights contend that they should be able to avoid application of the District's ordinance by redrawing their property line in such a manner that the sewage producing property is beyond 300 feet from the lateral stub. We take no issue with this argument as a general proposition of law. The Wrights were completely free to draw their property lines as they wished, even if the sole purpose in doing so was to avoid connecting to the District's sewer. However, once the lines were drawn within 300 feet of the District's sewer and the District served the Wrights notice to connect, it became too late for the Wrights to undo the effects of their original property lines.

■ The Wrights liken their situation to a taxpayer who exerts significant effort planning financial affairs to avoid taxes. The Wrights then note that this is considered wholly appropriate behavior, and that they, therefore, should be permitted to engage in similar behavior with respect to their property lines. A plan to avoid future taxes or the future operation of an ordinance does not mean that one may act to retroactively avoid similar consequences which have already come to fruition. As astutely noted by the District:

> Certainly, Wrights and all other taxpayers have the right to arrange their financial

affairs to minimize the tax they will pay in the future. They and all other taxpayers do not have the right, once taxes have become due according to tax laws then in effect, to change those financial affairs to [retroactively] eliminate the obligation to pay the taxes.

Brief of Appellee at 12. Similarly, since the original property line of the sewage producing property is within 300 feet of a sanitary sewer and the District properly notified the Wrights to connect to the sewer, we conclude the trial court did not err by refusing to allow the Wrights to avoid connecting to the District's sewer by redrawing their property lines.

## III.

### *Due Process*

The Wrights also argue that they were denied due process. In their Appellants' brief, the Wrights take issue with being denied an opportunity to be heard. This argument appeared to the District, and to us, to ultimately invoke issues concerning the adoption of the ordinance which required the Wrights to connect to the sewer.

However, in their Reply brief, the Wrights have clarified their argument as follows:

> The Appellee attempts to confuse the Appellants' position by asserting that due process was observed in the enactment of the ordinance. The enactment of the ordinance is not at issue. It is not the underlying ordinance with which the Appellants asserts [sic] their due process claim. It is with the attempt to *broaden the application of the ordinance in a way not intended* and without any opportunity for the Appellants to contest the Appellee's action which deprived them of a substantial property interest, towit [sic]: requiring a connection for one house sitting in the middle of many acres located more than 300 feet from an active "sanitary sewer", [sic] but within 300 feet (by 9.5 feet) of a lateral stub not carrying sewage.

---

**2.** The last and third from last sentences in the argument section of Appellants' brief addressing this issue contain sufficiently scandalous and in-

flammatory references to the trial court that we, *sua sponte,* strike these sentences from Appellants' brief.

Reply Brief at 6 (emphasis added). With this clarification, the Wrights' contention may be addressed without delving into any substantive due process law since the factual predicates for the Wrights' argument are not supported by the record.

■ The Wrights characterize their property as consisting of a home sitting in the middle of 32.5 acres of land. The Wrights do own a total of 32.5 acres. However, this property has been divided into several tracts. The specific tract relevant here, the sewage producing property, consists of the home situated on approximately 3.9 acres. This tract is within 300 feet of the lateral stub, which we have already concluded is a sanitary sewer. The Wrights' contention that the ordinance is being broadened to apply in an unintended manner by requiring them to connect a distant home in the middle of many acres to a sewer line that is not a "sanitary sewer" is wholly unsupported by the record. Whereas the factual predicates for the Wrights' due process claims are unsupported by the record, we conclude that the Wrights were not denied due process of law when they were ordered to connect to the District's sewer.

### IV.

#### *Equal Protection*

The Wrights' final argument is that the ordinance, as applied to their situation, denies them equal protection of the law since it is discriminatory in its effect and application. This contention meets the same fate as the due process argument.

■ The District has set connection fees at the rate of $950 for each connection plus $2,100 per acre of sewage producing property. Using the 32.5 acres of total property they own, the Wrights posit that they will have to pay $69,200 for the mandatory privilege of connecting to the District's sewer, exclusive of costs for the actual connecting line itself. Again, the factual predicate for their constitutional argument does not exist. As noted above, the sewage producing property is approximately 3.9 acres. Based on the only property relevant for the calculation, the Wrights will be charged $8,280 to connect. The Wrights have not argued that this fee is so exorbitant or otherwise dispropor-

tionate to fees encountered by other landowners that the ordinance denies them equal protection of the law. The Wrights have noted that it is hypothetically possible for a landowner to be forced to expend large sums of money if the property is sufficiently large, especially when compared to fees charged landowners in small-lot subdivisions. First, this hypothetical has not been occasioned on the Wrights. Second, there is no evidence in the record that this hypothetical has been forced on anyone. Third, and most important, hypothetical situations, without more, are not appropriate grounds for appellate relief.

Finally, the District has requested "just and proper relief," which we interpret as a request for attorney's fees and costs. IC 13-3-2-10(b)(9) provides for attorney's fees and costs to the District in any action to force connection. Accordingly, we remand to the trial court for proceedings to determine reasonable attorney's fees and costs.

Affirmed and remanded.

SHARPNACK, C.J., and DARDEN, J., concur.