**STATE ex rel. EMPLOYERS PROTECTIVE INSURANCE COMPANY (a/k/a EPIC), Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF INSURANCE, Sally B. McCarty in her official capacity as Commissioner of Insurance, and the Indiana Compensation Rating Bureau, Appellees–Defendants.**

No. 49A05–0406–CV–352.

Court of Appeals of Indiana.

July 26, 2005.

Rehearing Denied Oct. 24, 2005.

Hugh G. Baker, Jr., Baker Pittman & Page, Timothy E. Peterson, Indianapolis, for Appellant.

E. Scott Treadway, Robert S. Daniels, Kevin M. Quinn, Tabbert Hahn Earnest & Weddle, Indianapolis, for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Employers Protective Insurance Co., a/k/a EPIC ("EPIC") appeals from the

trial court's dismissal of its Verified Petition for Mandate seeking an order whereby the Indiana Compensation Rating Bureau ("ICRB") would be required to grant EPIC a hearing in accordance with Indiana Code Section 27–7–2–20.3(c)(2) ("Section 20.3(c)(2)"). EPIC presents the following dispositive issues for our review:[1]

1. Whether EPIC is a "person aggrieved" under the statute.
2. Whether the ICRB's December 2003 amendments to its bylaws are invalid.

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

Indiana Code Section 27–7–2–3 provides in relevant part:

> every insurance company authorized to effect worker's compensation insurance in this state shall be a member of the worker's compensation rating bureau of Indiana [ICRB]. The bureau shall be composed of all insurance companies lawfully engaged ..., wholly or in part in making worker's compensation insurance in Indiana or who shall ... be issued a certificate of authority to make worker's compensation insurance in this state.

The ICRB's primary statutory duty is to file annually with the Indiana Department of Insurance ("IDOI") new minimum premiums and rates to be utilized by worker's compensation insurers. These are advisory rates. Insurance companies are free to set their own rates. By statute, minimum premiums and rates may not be excessive, inadequate, or unfairly discriminatory.

Also by statute, "persons aggrieved" by the application of the minimum premiums and rates may request a hearing to challenge the rates.

The ICRB's affairs are managed by bylaws approved by its members and the IDOI ("the Bylaws"). Among the Bylaws is Article XIII, which provides:

> In the event of any disagreement, dispute or other controversy between a Member and the Bureau, the Bureau and the Member shall use good faith efforts to resolve such disagreement, dispute or other controversy including participation in mediation. In the event such disagreement, dispute or other controversy is not resolved, the Member and the Bureau agree that either the Member or the Bureau may petition the Commissioner for a decision on the matter. The Commissioner shall hold a hearing upon such petition at which time the Member and Bureau shall be entitled to present evidence. The Commissioner shall determine the matter and mail a copy of the decision to the Member and the Bureau. The decision of the Commissioner shall be final. The remedy set forth herein shall be the exclusive remedy of the Member.

Appellant's App. at 97. In December 2003, the ICRB amended the Bylaws by adding Article XIV, which provides that "The Bureau shall adopt and implement written procedures designed to effectuate the purpose and intent of the [Bylaws], as may be needed, from time to time." *Id.* at 142. Accordingly, the ICRB adopted a new set of Rules of Procedure ("the New Rules") governing hearings held pursuant to Section 20.3(c)(2).

On October 15, 2003, the ICRB filed its new minimum premiums and rates for

---

**1.** EPIC asserts that each of the four issues it raises on appeal turns on whether the trial court properly interpreted Section 20.3(c)(2) and the ICRB's bylaws.

**2.** We deny EPIC's request for oral argument.

2004. On November 17, 2003, EPIC requested a hearing pursuant to Section 20.3(c)(2) in order to challenge the proposed rates. The ICRB responded with a letter to EPIC asking, in relevant part, for an explanation of how EPIC qualifies as a "person aggrieved" under Section 20.3(c)(2).[3] After receiving an explanation, the ICRB notified EPIC that it had agreed to provide it "with an opportunity to present its grievances as set forth in Ind.Code § 27-7-2-20.3. The proceeding is scheduled for February 12, 2004 at 10:00 o'clock A.M." *Id.* at 104. Upon further inquiry, ICRB notified EPIC that the hearing would be conducted by an officer of the ICRB.

But EPIC wanted a hearing before the Dispute Resolution Committee ("DRC"), which was established by Article XI of the Bylaws "to provide an informal mechanism whereby any person aggrieved by the application of the Bureau's filings may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered." *Id.* at 94. The ICRB explained that EPIC was not entitled to a hearing before the DRC. Specifically, the ICRB stated in a letter to EPIC, dated February 2, 2004:

> You appear to be confused regarding the Dispute Resolution Committee. The Dispute Resolution Committee has only served to hear appeals from insureds and the application of filings relating to those insureds. To the best of [the ICRB's] knowledge, the DRC has never been utilized to hear a dispute between a Member and the ICRB.

*Id.* at 131.

In addition, EPIC expressed other concerns about the hearing and questioned whether the New Rules were properly approved and adopted. In response, the ICRB stated:

> You have also raised a number of issues regarding the February 12, 2004 hearing. Frankly, [the ICRB does] not understand your concerns. The ICRB is providing [EPIC] with a means by which to address its grievances relating to the current rate filing. [The ICRB] believe[s] that this process is exactly what [EPIC] requested .... With regard to the procedural rules, the rules were adopted and approved by the Chief Executive Officer of the ICRB. The adoption of administrative rules is well within his authority. Finally, the ICRB has not ignored the [Bylaws]. Contrary to the assertions in your letter, you are not entitled to hand pick the forum before which [EPIC] presents its grievances. The ICRB is providing [EPIC] a reasonable means by which it can present its grievances with regard to the current rate filing. The process adopted by the ICRB is completely consistent with Indiana statutes, the ICRB [Bylaws] and all concepts of due process....

*Id.* at 132. EPIC then wrote another letter to the ICRB challenging its authority to adopt the New Rules, but to no avail.

On February 11, 2004, EPIC filed its Verified Petition for Mandate requesting that the trial court: order the ICRB to provide EPIC with a hearing before the DRC; order the Commissioner of the IDOI to withdraw her approval of the amended Bylaws; and award costs. The ICRB filed a motion to dismiss under Indiana Trial Rules 12(B)(1) and 12(B)(6). In particular, the ICRB alleged that

---

**3.** In essence, EPIC asserts that it is harmed by minimum rates that are too low because in order to sustain any profit, it must set its own rates much higher than the minimum rates and cannot effectively compete with other insurance companies' rates.

EPIC's petition for mandate should be dismissed for the following reasons: EPIC did not comply with dispute resolution provisions contained in the Bylaws; EPIC is not a "person aggrieved" under Section 20.3(c)(2); EPIC lacks standing to pursue the petition for mandate; and EPIC failed to exhaust administrative remedies. Following a hearing, the trial court granted the motion to dismiss and entered findings and conclusions in relevant part as follows:

## CONCLUSIONS OF LAW

\* \* \*

14. The dispute raised by EPIC regarding the proper forum to address concerns relating to the 2004 Rate Filing is a dispute between the ICRB and EPIC, as a member of the ICRB.

15. EPIC must pursue any dispute with the ICRB under Article XIII of the [Bylaws].

16. EPIC has failed to follow the provisions of Article XIII of the [Bylaws] as follows:

  A. EPIC did not request mediation with the ICRB.

  B. EPIC did not petition the Commissioner of the IDOI for a review of the decision of the ICRB.

\* \* \*

18. Article XIII of the [Bylaws] provides the "exclusive remedy" of EPIC, as a member of the ICRB, for any dispute with the ICRB is an appeal to the Commissioner of the IDOI.

\* \* \*

20. EPIC is not entitled to the hearing that EPIC seeks.

\* \* \*

22. The issues raised by EPIC are subject to Article XIII.

23. Enforcement of Article XIII obligates EPIC to participate in the dispute resolution process as outlined therein.

24. Dismissal is proper where an issue raised by a litigant may be resolved by an applicable, legally valid and enforceable dispute resolution provision.

25. EPIC failed to adhere to the dispute resolution procedure as provided in Article XIII of the [Bylaws].

B. *The ICRB acted consistent[ly] with the [Bylaws].*

26. According to Article XIV of the [Bylaws], the ICRB may adopt and implement procedures to effectuate the purpose and intent of the [Bylaws].[6]

_____

[6] EPIC alleges in the Verified Petition for Mandate that Article XIV of the [Bylaws] was improperly adopted, and therefore, not valid and enforceable. However, EPIC fails to set forth any evidence in support of such [a] proposition. Further, even if Article XIV of the [Bylaws] was not valid and enforceable, EPIC would still have to comply with Article XIII of the [Bylaws]. EPIC has failed to comply with Article XIII of the [Bylaws], as discussed in more detail in Section (A) of the Conclusions of Law.

27. Consistent with this provision, the ICRB adopted the Rate Filing Hearing—Rules of Procedure, as the appropriate forum to address disputes between a member and the ICRB relating to a Rate Filing.

\* \* \*

29. The ICRB provided EPIC with an opportunity to address its concerns with the 2004 Rate Filing at a hearing on February 12, 2004, which was conducted consistent with the [Bylaws] and the Rate Filing Hearing—Rules of Procedure.

30. EPIC appeared at the hearing on that date and offered argument concerning the reason(s) EPIC believed the

ICRB was not affording EPIC the proper forum to hear and decide the allegations of EPIC.

31. However, EPIC refused to participate further in the proceeding or to present its grievances with the 2004 Rate Filing.

32. The ICRB fully performed under the terms of the [Bylaws] and Rate Filing Hearing—Rules of Procedure.

C. *EPIC is not a "person aggrieved" entitled to a hearing on the 2004 Rate Filing.*

35. EPIC is not entitled to a hearing under Indiana Code § 27–7–2–20.3(c)(2) as EPIC is not a "person aggrieved by the application" of the 2004 Rate Filing.

\* \* \*

For each of the foregoing reasons, this Action is hereby dismissed.

*Id.* at 16–29 (internal citations omitted, emphases original). This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: "Person Aggrieved"

■ EPIC first contends that the trial court erred when it concluded that it is not a "person aggrieved" under Indiana Code Section 27–7–2–20.3(c)(2) ("Section 20.3(c)(2)"). In particular, EPIC maintains that the trial court misinterpreted both Section 20.3(c)(2) and legal precedent interpreting the statute in arriving at its conclusion on this issue. We cannot agree.

■ The interpretation of a statute is a question of law reserved for the courts. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct. App.2000), *trans. denied.* "The first and often the only step in resolving an issue of statutory interpretation is the language of the statute." *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 972 (Ind.1998). If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* Our task with respect to statutory interpretation has been summarized as follows:

We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words."

*Id.* (quoting *Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995) (citations omitted)). Nothing may be read into a statute which is not within the manifest intention of the legislature as ascertained from the plain and obvious meaning of the words of the statute. *State, Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 946 (Ind.1999) (citations omitted).

■ Again, Section 20.3(c)(2) provides:

Every company or the bureau shall provide within Indiana reasonable means whereby any person aggrieved by the application of its filings may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered. If the company or the bureau fails to grant or reject such request within thirty (30) days, the aggrieved person may proceed in the same manner as if the request had been rejected. Any aggrieved person affected by such action of such company or the bureau on such request may, within thirty (30) days after written notice of such

action, appeal to the commissioner who, after a hearing held upon not less than ten (10) days written notice to the aggrieved person and to such company or the bureau, may affirm, modify, or reverse such action.

Indiana Code Section 27–7–2–2 defines "company" as an insurance company. Thus, in accordance with the ordinary and plain meaning of Section 20.3(c)(2), an insurance company cannot be a "person aggrieved" because companies, along with the ICRB, are responsible for providing a hearing to such persons. Nothing in Section 20.3(c)(2) suggests that an insurance company is required to provide a hearing for itself or for another insurance company. The legislature could not have intended such an absurd result.[4]

Indeed, in a diversity case, Judge Lozano of the United States District Court for the Northern District of Indiana has explained that Section 20.3(c)(2) "provides the procedure by which *an insured* may contest the premiums applied to it." *Liberty Mutual Ins. Co. v. K.A.T., Inc.*, 855 F.Supp. 980, 987 (N.D.Ind.1994) (emphasis added). The court observed that the statute "requires both the company and the [ICRB] to have procedures available for the 'person aggrieved,' namely[,] the insured, to contest the manner in which the insured's premium rate has been calculated." *Id.* The court continued:

> [the statute] creates a remedy for a "person aggrieved" by the action of an insurance company or the ICRB. There is no way that ... the insurer[ ] could be considered a "person aggrieved" under the plain meaning of this statute. The insurer is not the "person aggrieved" that the Indiana legislature intended this statute to protect. The statute is not intended to provide a remedy for the insurer ....

*Id.*

While the issue addressed in *K.A.T.* is very different from that presented here,[5] the District Court's interpretation of the ordinary and plain meaning of the term "person aggrieved" and its conclusion that an insurer is not a person aggrieved under the statute applies here. Thus, we hold that EPIC cannot be a "person aggrieved" under Section 20.3(c)(2).[6]

---

4. EPIC asserts that if it is not considered a person aggrieved under Section 20.3, then it has "no adequate remedy to inadequate advisory rates." Brief of Appellant at 15. But the ICRB's Bylaws provide for mediation when a company has a dispute with the ICRB. Further, "[i]n the event such disagreement, dispute or other controversy is not resolved, the Member and the Bureau agree that either the Member or the Bureau may petition the Commissioner [of the IDOI] for a decision on the matter." Appellant's App. at 97. Thus, the bylaws provide a procedure for EPIC to challenge the advisory rates.

Moreover, we will not read something into a statute that is not there. *See Indianapolis Newspapers*, 716 N.E.2d at 946. EPIC's contention that the ICRB should be judicially estopped from changing its position on the interpretation of Section 20.3(c)(2) is likewise without merit. Regardless of whether the ICRB has advanced two conflicting interpretations of the statute, the plain and ordinary meaning of the statute is clear.

5. In *K.A.T.*, Liberty Mutual Insurance Company filed suit against its insured K.A.T. for unpaid worker's compensation insurance premiums. On appeal, K.A.T. asserted in relevant part that Section 20.3(c)(2) provided an administrative remedy for insureds and insurers "which Liberty Mutual was bound to follow before initiating suit." *K.A.T.*, 855 F.Supp. at 986.

6. EPIC maintains that "a careful reading of the *K.A.T.* decision shows that it is a highly fact-specific ruling that does not provide a clear precedent for interpreting Section 20.3 in instances when an insurer has challenged the [ICRB]'s advisory rates." Brief of Appellant at 12. We cannot agree. The relevant discussion in *K.A.T.* pertains to the ordinary and plain meaning of the statute, which is not fact-sensitive.

### Issue Two: Amendments to Bylaws

■ EPIC also contends that "the amendment to the [Bylaws] approved by the governing board at its December 11, 2003 meeting was an illegal act under the [Bylaws] of the ICRB." Appellant's App. at 75. In particular, EPIC asserts:

> it is clear under Article V of the [Bylaws] that only the membership of the [ICRB] can approve amendments to the [Bylaws]. It is undisputable in this case that the Governing Board does not have the right to amend the [Bylaws], and that the Governing Board members alone voted on the December 11th Amendments. Without these amendments, the [ICRB] would not have had the authority to promulgate the New Procedures with respect to hearing complaints regarding advisory rates such as EPIC's. Consequently, prior to EPIC's complaint, the only procedures that existed to hear such challenges were contained in Article XI, which required a hearing before the DRC.

Brief of Appellant at 26. But in a footnote to its Conclusion No. 26, the trial court noted that EPIC had failed "to set forth any evidence in support" of that contention. Appellant's App. at 19.

Indeed, on appeal, EPIC does not direct us to any part of the record to support its contention that "the Governing Board members alone voted on the December 11th Amendments." The undisputed evidence shows that the ICRB sent the proposed amendments to all its members for approval and invited the members to attend the December 2003 meeting. Further, the undisputed evidence shows that "the proposed revisions to the Bylaws were unanimously approved by the members of the ICRB present at a meeting of the ICRB and submitted to the IDOI for approval." Appellant's App. at 236. And contrary to EPIC's assertion, there is no evidence that the December 11, 2003, meeting violated the provision in the Bylaws governing how special meetings of the members shall be convened.[7] EPIC has not demonstrated that the December 11, 2003 amendments to the Bylaws are invalid.

Affirmed.

RILEY, J., concurs.

SULLIVAN, J., concurs with separate opinion.

### SULLIVAN, Judge, concurring.

I fully concur as to Issue Two. I also concur as to the holding under Issue One that EPIC is not entitled to a hearing and determination by the Dispute Resolution Committee.

However, I deviate from the majority's adoption of the narrow construction of the phrase "aggrieved person" as contained in *Liberty Mutual Ins. Co. v. K.A.T., Inc.*, 855 F.Supp. 980 (N.D.Ind.1994). That opinion holds that only an insured may be considered an aggrieved person for purposes of I.C. § 27–7–2–20.3.

To be sure, Subsection (c)(2) of the statute lends itself to that interpretation insofar as the requirement that an insurer must afford an "aggrieved person" a hearing with respect to premiums to be

---

7. Article IX of the Bylaws provides in relevant part that "[s]pecial meetings of the Members may be held at such dates, times and places as may be determined by the Governing Board at the request of: (a) at least thirty (30) Members of the Bureau; (b) the Commissioner; or (c) the Chairperson." EPIC asserts that because the December 2003 meeting was not requested by at least thirty ICRB members, it violated Article IX. But EPIC does not direct us to any evidence that neither the Commissioner nor the Chairperson requested the meeting. As such, EPIC's contention on this point must fail.

charged an insured. Nevertheless, the statute's basic context is the matter of approval or disapproval of proposed minimum rates filed either by an insurer *or* by ICRB.

As the majority notes, the ICRB Bylaws provide for a petition to the Commissioner of the IDOI by the Bureau or by an insurer member of the ICRB with respect to advisory rates. In my view, this provision would be a hollow remedy indeed if there were no provision under I.C. § 27–7–2– 20.3 for an insurer to contest a minimum schedule of rates filed by ICRB with the Commissioner. For this reason, I would hold that to this extent, an insurer-member of ICRB may be considered an "aggrieved person."